WEST END ASSOCIATES,
L.P., Appellant,

v.

SEA GREEN EQUITIES, Appellee.

Civ. A. No. 93–3515.

United States District Court,
D. New Jersey.

April 8, 1994.

As Amended April 21, 1994.

**574**

James O. Guy, Union, NJ, for appellant.

Jerrold I. Langer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for appellee.

## *OPINION*

WOLIN, District Judge.

On January 31, 1994, on the application of appellee Sea Green Equities ("Sea Green"), this Court issued an Order requiring appellant West End Associates, L.P. ("West End"), to show cause why its pending appeal of two orders entered by Judge William F. Tuohey of the United States Bankruptcy Court, District of New Jersey, should not be dismissed on grounds of mootness. The parties have submitted the required papers in accordance with the Order and the Court has considered the pending issues pursuant to Federal Rule of Civil Procedure 78.

## BACKGROUND

The genesis of this matter dates back to August 16, 1991, when Hansen Savings Bank, predecessor in interest to Sea Green, filed a foreclosure action in the Superior Court of New Jersey, based upon a note and mortgage associated with West End's only asset, an apartment complex (the "property") in Long Branch, New Jersey. In April 1992, West End defaulted in the foreclosure action by failing to answer the foreclosure complaint. On November 23, 1992, the state court substituted Hansen Savings Bank with Sea Green, which had previously purchased the subject note. On March 12, 1993, the state court entered a final judgment of foreclosure.

On March 31, 1993, seeking the protection of federal bankruptcy law, West End filed a bankruptcy petition under Chapter 11 of the United States Bankruptcy Code. The bankruptcy proceeding was assigned to Judge Tuohey.

On July 15, 1993, Judge Tuohey issued an opinion and order granting Sea Green relief from the automatic stay provision of the Bankruptcy Code (11 U.S.C. § 362) and authorizing Sea Green to proceed with its foreclosure action (the "July 15 Order"). During the pendency of Sea Green's stay relief application before Judge Tuohey, West End moved before the state court to vacate the final judgment of foreclosure. The motion was denied.

With the automatic stay lifted by Judge Tuohey, thus began the somewhat tortuous procedural history of the matter before this Court. On August 11, 1993, West End filed a notice of appeal of the July 15 Order ("first appeal"). Subsequently, West End filed in the bankruptcy court a motion for reconsideration of the July 15 Order, which was denied by Judge Tuohey in an order dated October 4, 1993 (the "October 4 Order"). On October 13, 1993, West End filed a notice of appeal of the October 4 Order ("second appeal").

A sheriff's sale of the property was scheduled for October 18, 1993. On October 13, West End filed an emergency motion to stay the sale pending appeal. This Court denied the motion in an opinion and order dated October 14, 1993—West End had neglected to seek a stay from the bankruptcy court prior to bringing its petition before this Court.

Following two adjournments, the sheriff's sale was rescheduled for December 13, 1993. West End returned to the bankruptcy court to request a stay pending appeal. With Judge Tuohey then on vacation, Judge Novalyn Winfield heard West End's motion and granted a temporary stay until December 16, 1993, when Judge Tuohey could address the application on the merits. By opinion and order dated December 16, 1993, Judge Tuohey denied West End's request for a stay.

The sheriff's sale was rescheduled for January 10, 1994.

With a cover letter dated January 7, 1994, West End submitted to this chambers an emergency motion for a stay pending appeal. This emergency motion was never filed with the Clerk of the Court, nor was permission sought to file the motion directly with this Court's chambers. On January 10, 1994, the property was sold at the sheriff's sale to Sea Green for $100.

By an order dated January 18, 1994, the Court consolidated West End's first and second appeals. On January 31, 1994, the Court issued the pending order to show cause.

## DISCUSSION

■ Sea Green contends that the absence of a stay pending West End's appeal and the consequent sale of the property render the appeal moot. West End argues to the contrary. The questions raised by this order to show cause are matters of first impression in the Third Circuit. The Court must determine whether principles of mootness apply to the instant case, and if so, whether any exceptions should be recognized and employed here to allow West End's appeal to proceed. Courts in other circuits have addressed these issues and the Court turns to them for guidance in determining the appropriate standards.

■ As a preliminary reminder, the issue before the Court is mootness, not the merits of West End's appeal of the July 15 and October 4 Orders.[1] A number of cases addressing the question of mootness emanate from the courts of the Ninth Circuit and

state this general principle: Where a property is sold pursuant to a bankruptcy court order and the "property is sold because a stay [pending the appeal of the bankruptcy court's order] has not been secured [by the debtor], an appellate court is powerless to grant effective relief, and the appeal must be considered moot." *Landry v. Chevy Chase Fed. Sav. Bank*, 1994 WL 14086, at *1 (9th Cir. Jan. 20, 1993); *In re Mann*, 907 F.2d 923, 926 (9th Cir.1990); *In re Onouli–Kona Land Co.*, 846 F.2d 1170, 1173–74 (9th Cir. 1988); *In re Sun Valley Ranches, Inc.*, 823 F.2d 1373, 1374–75 (9th Cir.1987).

Other circuits have adopted this general principle. *In re March*, 988 F.2d 498, 499 (4th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993); *In re Sullivan Central Plaza, I, Ltd.*, 914 F.2d 731, 733 (5th Cir.1990); *In re Lashley*, 825 F.2d 362, 364 (11th Cir.1987), *cert. denied*, 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). Given its general acceptance in the federal courts, the mootness rule should apply in the instant case. Thus, West End's failure to obtain a stay of Judge Tuohey's July 15 and October 4 Orders and the ensuing sale of the property may render the pending appeal moot.

■ However, the Court will not summarily apply the mootness rule and finds that any application here requires further analysis. The Court acknowledges that the mootness rule may not be without exception. Other courts have recognized and considered certain exceptions to the mootness rule. *See, e.g., Onouli–Kona*, 846 F.2d at 1173. Whether certain exceptions exist appears to depend

---

1. In its appeal, West End argues that the bankruptcy court erroneously lifted the stay to allow Sea Green to proceed with the foreclosure sale. The Bankruptcy Code provides that Chapter 11 debtors may modify "any lien" as part of a plan of reorganization. 11 U.S.C. § 1123(a). West End argues that this language allows a debtor to modify foreclosure judgments in the formulation of a plan of reorganization. According to West End, the bankruptcy court lifted the automatic stay for Sea Green after concluding that West End could not modify Sea Green's foreclosure judgment and thus could not confirm a plan of reorganization.

The thrust of West End's appeal concerns the Third Circuit's recent opinion in *In re DeSeno*, 17

F.3d 642 (3d Cir.1994), in which it was determined that a foreclosure judgment is not a judicial lien but a security interest, which is, in any event, a " 'lien created by an interest.' " *DeSeno*, 17 F.3d at 645 (quoting 11 U.S.C. § 101(51)). Therefore, the Third Circuit concluded that 11 U.S.C. § 1123(a) provides that a debtor may modify a foreclosure judgment in contemplation of a plan of reorganization. *Id.* While West End may have successfully argued this point of law, the Court will not assume as a consequence that West End's pending appeal will also prove successful. The appeal is not properly before the Court at this time—Sea Green has not yet submitted any opposition papers in view of this intervening order to show cause.

upon (1) the policies underpinning a court's adoption of the mootness rule and (2) the interplay of the relevant provisions of the bankruptcy code under which a bankruptcy court may authorize the foreclosure or sale of a debtor's assets. An assessment of the current case law reveals that there is not a consensus among the courts on these particular issues.

The mootness rule has been invoked for either of two different reasons. The Ninth Circuit has concluded that the mootness rule serves the " 'particular need' for finality in bankruptcy." *Onouli–Kona*, 846 F.2d at 1172 (quoting *Algeran, Inc. v. Advance Ross Corp.*, 759 F.2d 1421, 1423 (9th Cir.1985)). The *Onouli–Kona* court also noted that the mootness rule also derives from the inability to fashion relief after a property has been sold, but that relief may be available in certain circumstances, including where the purchaser is a party to the subject appeal. *Id.* Thus, while the purpose of finality may have been the impetus for the Ninth Circuit's early decisions involving the mootness rule, the ability of an appellate court to provide relief may create an exception to the rule's application.

■ The Fifth Circuit has concluded that mootness rule does not derive from the need for finality, but from the lack of available relief from the appellate court. *Sullivan Central Plaza*, 914 F.2d at 734 & n. 7. While these two circuits may disagree on the policies underpinning the development of the mootness rule, they appear to reach the same result: an exception to the mootness rule may apply where the appellate court has the ability and power to fashion relief following a sale of property in the absence of a stay pending appeal.

This Court speculates that the apparent disagreement between the two circuits may be explained by existence of two different bankruptcy code provisions from which questions concerning the applicability of the mootness rule generally arise. In one instance, the foreclosure or sale of a debtor's asset may occur subsequent to a bankruptcy court order pursuant to 11 U.S.C. § 362(d), wherein the bankruptcy court may authorize a party in interest to enforce a judgment

obtained "against the debtor or against property of the estate ... obtained before the commencement of the [Chapter 11 case]." 11 U.S.C. § 362(a)(2). Such are the circumstances in the instant case, where Judge Tuohey lifted the automatic stay to allow Sea Green to enforce its final judgment of foreclosure obtained in a New Jersey court prior to West End's petition for bankruptcy protection under Chapter 11.

■ The mootness rule also may be implicated where the sale of a debtor's asset is authorized under 11 U.S.C. § 363, wherein the bankruptcy court may authorize the bankruptcy trustee to sell property of the estate with or without notice, depending upon the circumstances of the debtor's business operations during the pendency of the bankruptcy proceedings. 11 U.S.C. § 363(b), (c). Section 363 was not the statutory vehicle by which the property was sold in the instant case.

In assessing the applicability of the mootness rule, the Ninth Circuit deemed irrelevant to its analysis whether the subject sale occurred following a bankruptcy court order under section 362 or 363. *See Onouli–Kona*, 846 F.2d at 1171 (stating that "[w]hether [a bankruptcy court] order directly approves the sale or simply lifts the automatic stay, the mootness rule dictates that the ... failure to obtain a stay moots the appeal"). The Court agrees with the Ninth Circuit as far as the applicability of the mootness rule in general, but finds that the pertinence of any exception to the rule may depend upon which bankruptcy code provision enabled the sale of the asset.

The Ninth Circuit has carved out two exceptions to the mootness rule: (1) "where real property is sold to a creditor subject to a right of redemption" and (2) "where state law would otherwise permit the transaction to be set aside." *Mann*, 907 F.2d at 926. While these exceptions were formulated and refined in *Mann*, and other cases, with respect to property sales under section 363, they have also been applied to foreclosure sales under section 362. In *In re Sullivan Central Plaza, Inc., Ltd.*, 106 B.R. 934, 937 (N.D.Tex. 1989), the district court recognized an excep-

tion to the mootness rule where, subsequent to section 362(d) order, debtor's property is purchased by a creditor who is a party to the pending appeal and where the applicable state law provides a statutory right of redemption. The Fifth Circuit Court of Appeals affirmed the decision, but concluded that the scope of relief should not be limited to statutory redemption rights exclusively, but should include any other relief that might be available under the relevant state law. *Sullivan Central Plaza,* 914 F.2d at 734.

At this juncture in the analysis, there appears to be consensus among the federal courts, which would provide that this Court "cannot fashion a remedy [for West End] unless the applicable state law provides one." *Id.* at 735. Thus, the Court in due course will assess whether the relevant state law, New Jersey, furnishes West End potential relief from the mootness rule and, in any event, whether the Court may provide any such relief in the instant case. However, prior to addressing those questions, the Court is compelled to complete its analysis of the mootness rule as it applies to sales or foreclosure with respect to both section 362 and section 363.

■ This consequence stems from West End's allegations that Sea Green did not purchase the property in good faith, as evidenced by the de minimis purchase price of $100 for a property with an estimated value of $975,000 to $1,140,000. The Ninth Circuit has concluded that the "mootness rule operates only when a purchaser bought an asset in good faith." *Onouli–Kona,* 846 F.2d at 1173–74 (rejecting the Third Circuit's position in *In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143 (3d Cir.1986), that good faith depends on the value of the property sold). Accordingly, application of the mootness rule may be excepted where the property was not purchased in good faith.

The Court is not convinced that such an exception is implicated in the instant case. The good faith exception to the mootness rule arises from section 363(m), which provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of [section 363] of a sale ... of property does not affect the validity of a sale

or lease under such authorization to an entity that purchased ... such property in good faith...." 11 U.S.C. § 363(m).

In *Onouli–Kona,* the Ninth Circuit reaffirmed its position that " 'the omission from Section 363(m) of [general language] does not indicate an intent that a conveyance by someone other than a trustee is now outside the general rule of mootness when a stay pending appeal has not been obtained.' " 846 F.2d at 1172 (quoting *Algeran,* 759 F.2d at 1424). While *Onouli–Kona* involved the sale of property pursuant to section 363, the Ninth Circuit invoked section 363(m) in a subsequent case involving a foreclosure sale resulting from the lifting of the automatic stay under section 362(d). *Mann,* 907 F.2d at 926 (stating that "[u]nder 11 U.S.C. § 363(m), an appeal of a bankruptcy court's ruling on a foreclosure action generally cannot affect the rights of a good faith purchaser of the foreclosed property, unless the debtor stays the foreclosure sale pending an appeal").

While the good faith exception of section 363(m) was not at issue in *Mann,* the court's dictum suggests that such an exception would apply to foreclosure sales following a lift of stay under section 362. Other circuits have rejected such a proposition. *See Sullivan Central Plaza,* 914 F.2d at 734–35 (concluding that section 363(m), by its terms, applies only to sales authorized section 363(b) or (c), which allows a district court to "remedy a bad faith sale ... because the authority to sell ... emanated from the bankruptcy code and the bankruptcy court, and the authorization itself was tainted"). *See also Sewanee Land, Coal & Cattle, Inc.,* 735 F.2d 1294, 1295 n. 2 (11th Cir.1984) (concluding that section 363(m), by its terms, does not apply to foreclosure actions stemming from a lift of stay under section 362).

■ This Court agrees with the rationale of the Fifth and Eleventh Circuits. Section 363(m) expressly applies to sales made pursuant to subsections (b) and (c) of section 363. Consequently, there appears to be two distinct exceptions to the mootness rule: a statutory protection under section 363 and a judicially created exception in view of the

applicable state law, which is implicated when the automatic stay is lifted and a creditor is authorized to proceed against the debtor or debtor's property under state law and without hindrance from the bankruptcy code. *See Sullivan Central Plaza*, 914 F.2d at 734.[2] In relation to the pending appeal, the Court will not consider section 363(m)'s good faith provision in determining whether West End's appeal is moot. The only remedy available to West End is that which may be provided under New Jersey law, and any requirement of a good faith purchase must be afforded therein.

Before turning to New Jersey law, the Court makes these additional observations. As noted above, both the Fifth and Ninth Circuits have concluded that exceptions to the mootness rule may exist where the relevant state law so provides. However, in *Sullivan Central Plaza*, the Fifth Circuit appears to suggest that a district court has no jurisdiction to determine whether a foreclosure sale should be set aside under state law when the pending appeal concerns merely the propriety of a bankruptcy court order lifting the automatic stay, not the merits of the foreclosure action. 914 F.2d at 734–36 (stating that the judicially created exception emanates from the fundamental jurisdictional tenet that a federal court may hear only actual cases and controversies) (citing U.S. Const. art. III, § 2).

In stark contrast, the Ninth Circuit indicates that a district court does have jurisdiction during the pendency of a bankruptcy to investigate and apply the pertinent state law which may operate to set aside a transaction where the debtor failed to obtain a stay pending the appeal of the lift stay order. *See Mann*, 907 F.2d at 926. *See also In re Worcester*, 811 F.2d 1224, 1228 (9th Cir.1987) (stating that if debtor has right under state law to set aside foreclosure sale, the debtor has same right to set aside in bankruptcy under the applicable state law) (citing 11 U.S.C. § 549(a)).[3]

Having considered the analysis and approach taken by each of the circuits, the Court concludes that application of either to the instant case results in the dismissal of West End's appeal on the ground of mootness.

■ The Court finds the Fifth Circuit's analysis compelling. Where the bankruptcy court lifts the automatic stay and thus authorizes a foreclosure action or sale:

> state law provides the authority for the foreclosure sale, and the lifting of the automatic stay merely removes an impediment to a sale consummated pursuant to state law. The details of the foreclosure sale do not form the basis of the appeal from the lifting of the automatic stay; and even if the appeal could be heard, these details

---

2. The court in *Sullivan Central Plaza* also acknowledged that "in a particularly egregious cases, the broad equitable power of the district court might yield a remote remedy even in the absence of a statutory provision—at least when all the necessary parties are before the court." 914 F.2d at 735. The fact is not lost on this Court that West End's appeal might ultimately prove successful under the Third Circuit's recent decision in *In re DeSeno*, 17 F.3d at 645. *See supra* note 1. West End has argued that a stay pending appeal is appropriate where the appeal involves matters of first impression and other factors favor the maintenance of the status quo. *See In re Mader*, 100 B.R. 989, 991 (N.D.Ill. 1989). However, Judge Tuohey's decision to deny West End's application for a stay is not the subject of this, or any other appeal, currently pending before this Court. Thus, the Court is not in any position to determine whether the bankruptcy court's denial of the stay was erroneous.

3. West End also argues that its appeal is not moot because the Bankruptcy Code mandates the transfer of the property back to West End under 11 U.S.C. § 549, which authorizes the bankruptcy trustee to avoid certain post-petition transfers of estate property. However, the trustee may exercise this authority vested by section 549 only in certain instances, not applicable here, or in circumstances where the transfer is unauthorized under the bankruptcy code or by the court. Judge Tuohey authorized Sea Green's pursuit of the foreclosure action and sale by lifting the automatic stay under 11 U.S.C. § 362. Section 549 is of no assistance to West End here.

West End also invokes 11 U.S.C. § 548, which authorizes a bankruptcy trustee to avoid any fraudulent transfers made prior to the filing of the bankruptcy petition. The subject foreclosure sale occurred after West End filed for bankruptcy. *See Sullivan Central Plaza*, 914 F.2d at 734 n. 8. Section 548 also provides no help to West End.

would not be properly before the district court.

*Sullivan Central Plaza,* 914 F.2d at 735.

■ Currently before the Court are West End's appeals of Judge Tuohey's July 15 and October 4 Orders, not the details of the foreclosure sale, although some facts have been alleged or certified by both parties on this order to show cause. Thus, applying the Fifth Circuit's rationale, this Court would conclude that it has no jurisdiction to address the merits of the foreclosure sale where the only issue on appeal is the propriety of Judge Tuohey's lift stay order. Even if West End could point to some available remedy under New Jersey law regarding wrongful foreclosure, the Court would have no jurisdictional authority on this appeal to address the question or provide any relief. *See id.* at 734 ("[a]bsent a stay, a foreclosure sale generally will be authorized. . . . [and] the availability of an action for wrongful foreclosure is inapposite").

While bowing to jurisdictional constraints, the court in *Sullivan Central Plaza* intimated that where the details of the foreclosure sale are properly raised on appeal, the district court may fashion an appropriate remedy if the applicable state law so provides. *Id.* In contrast, where *Sullivan Central Plaza* ends with intimation, the Ninth Circuit picks up with comprehensive exploration and consideration of the applicable state law to determine whether an appeal is moot absent a stay. From this perspective, the Court now turns to New Jersey law.

■ New Jersey has no statutory right of redemption, but does provide an equitable right of redemption to a mortgagor. *Hardyston Nat'l Bank v. Tartamella,* 56 N.J. 508, 513, 267 A.2d 495 (1970). In conjunction with this equitable right, New Jersey has established certain rules governing foreclosure sales, which provide that

> [a] sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served upon him within 10 days after the sale or at any time

thereafter before the delivery of the conveyance.

R. 4:65–5.

The New Jersey Supreme Court has held that a mortgagor may exercise the right of redemption "within the ten-day period fixed by R. 4:65–5 for objection to the sale and until an order confirming the sale if objections are filed under the rule." *Hardyston,* 56 N.J. at 513, 267 A.2d 495. *See also East Jersey Sav. & Loan Ass'n v. Shatto,* 226 N.J.Super. 473, 481–82, 544 A.2d 899 (N.J.Ch.1987) (clarifying *Hardyston* by stating that upon filing an objection to a foreclosure sale, the mortgagor cannot reserve the right of redemption should the sale ultimately be upheld).

The sale of the property in the instant case occurred on January 10, 1994. (Supplemental Certification of Jerrold I. Langer, Exhibit B). Under the above-referenced New Jersey law, West End consequently had until January 20, 1994, to redeem the property or file an objection to the foreclosure sale. It did neither. Thus, West End, now out of time, cannot assert, as a matter of right, an equitable right to redeem the property. Even short of a timely tender in redemption, West End failed to file a timely objection, which may have been sufficient to overcome the mootness rule.

■ Having sat on its rights to redeem or object to the sale, West End asserts that it has an equitable right of intervention independent of Rule 4:65–5, which would allow West End to challenge the sale out of time if warranted. *See Union County Sav. Bank v. Johnson,* 210 N.J.Super. 589, 598, 510 A.2d 288 (N.J.Ch.1986) (recognizing the independent equitable right, but rejecting mortgagor's request to void the sale where mortgagor had missed the sale under the mistaken assumption that an adjournment had been granted). *See also Penn Fed. Sav. & Loan Ass'n v. Joyce,* 75 N.J.Super. 275, 278, 183 A.2d 114 (1962) (stating that independent ground for equitable relief arises when there is "fraud, accident, surprise, irregularity in the sale, [or] the like").

West End alleges various irregularities with respect to the foreclosure sale, citing

improper service of the notice of sale under the pertinent New Jersey rules and the suspicious purchase price for the property ($100). The Court is not persuaded that West End would be entitled to any equitable relief out of time. In its brief, West End alleges that service of the notice of sale was invalid because acceptance of the notice sent by registered mail did not occur outside the requisite number of days before the sale. *See* R. 4:65–2, 1:3–1, 1:5–4(b). This may well be, but West End does not even allege, much less, certify as to when the notice of sale was received and accepted. However, it is clear that West End did receive a notice of sale dated December 27, 1993, some time prior to the January 10, 1994 sale. Nonetheless, West End never objected to the sale, even after receiving notification that the sale had in fact occurred as scheduled. (Certification of Jerrold I. Langer, Exhibit B).

■■■■■ Sea Green purchased the property for $100, despite the fact that Judge Tuohey had made explicit findings, estimating the value of the property at somewhere between $975,000 to $1,140,000. (Certification of Jerrold I. Langer, Exhibit A, Judge Tuohey's Order Denying Stay Pending Appeal at 3). West End alleges that the de minimis purchase price reflects the occurrence of an irregularity in the sale procedures. However, outside the unsubstantiated allegations regarding service of the notice of sale, West End provides no other allegations or facts to suggest that the sale procedures deviated from any legal requirements. *See, e.g.,* R. 4:65–3 (establishing rules for advertising a sale). Without other proof of some type of irregularity, the Court will not contemplate the setting aside of this foreclosure sale. *See Stark v. Flemington Nat'l Bank & Trust Co.,* 38 N.J.Super 58, 67, 118 A.2d 114 (N.J.Ch. 1955) (concluding that "where a mortgagee becomes a purchaser at a foreclosure sale at which the [property is] sold *unfairly and at an underprice,* the foreclosure sale will be set aside by a court of chancery").[4]

■■■■ West End's protestations fail to disclose any degree of unfairness that would excuse West End from the requirements for redemption and the filing of objections to a foreclosure sale under *Hardyston* and Rule 4:65–5. Consequently, there exists no remedy under New Jersey law, statutory or otherwise, which would allow this Court to fashion any remedy for West End in face of the mootness rule and West End's failure to seek or obtain a stay pending this appeal.[5] Therefore, whether guided by the Fifth Circuit's jurisdictional restraint or the Ninth Circuit's exploration of state law, the Court finds that West End's appeal is moot and must be dismissed.

■■■■ Finally, Sea Green has requested an award of attorneys' fees incurred in connec-

---

**4.** Absent a showing of fraud or mistake, the purchase price alone cannot provide the impetus for the equitable relief, particularly under the circumstances of this case. Assuming that the sale procedures were not irregular, nothing should prevent West End or any other prospective purchaser from successfully bidding for the property at $100. Notwithstanding the issue of sale procedure, the suspicions raised by the $100 purchase price are dispelled by the facts of this case. Sea Green is not the benefactor of some great windfall. The property was the only asset of the debtor. Judge Tuohey determined the value of the property to be somewhere between $975,000 to $1,140,000. Sea Green held a foreclosure judgment on the property in excess of $1.2 million plus interest. In addition, the property is subject to a second mortgage with a balance due in excess of $600,000.

**5.** As noted above, on January 7, 1994, West End did submit to this Court's chambers an emergency motion for an order staying the foreclosure sale pending its appeal of Judge Tuohey's orders.

Federal Rule of Civil Procedure 5(e) provides that "[t]he filing of papers with the court ... shall be made by filing them with the clerk of the court, except that the judge may permit the papers to be filed with the judge...." Fed.R.Civ.P. 5(e). West End never filed the emergency motion with Clerk of the Court, nor did it seek permission to file the motion directly with this Court. The Court was not alerted that an emergency application for a stay had been submitted directly to chambers. It is not the common occurrence that a party will silently submit an emergency motion to stay a foreclosure sale three days prior to the sale, and then remain silent during the following days while the motion is presumably pending and day of the sale comes and goes without word from the Court. Given this Court's heavy docket and the inordinate amount of paperwork that passes through this chambers on a daily basis, the Court cannot take responsibility for the filing of parties' motions, emergency or otherwise, absent the most minimal assistance from counsel.

tion with West End's appeal and the order to show cause. The Court will deny the request. West End's appeal presented issues which, during the pendency of the appeal, were matters of first impression before the Third Circuit. In addition, West End's arguments here in support of an exception to the mootness rule, although unsuccessful, were not so fallacious as to warrant an award of attorneys' fees.

An appropriate order is attached.

## ORDER

In accordance with the Court's Opinion filed herewith,

It is on this 8th day of April, 1994,

ORDERED that the consolidated appeals (Civil Action Numbers 93–3515 and 93–5621) of appellant West End Associates, L.P., are dismissed as moot, and it is further

ORDERED that the request for an award of attorneys' fees by Sea Green Equities is denied.