**In re CF & I FABRICATORS OF UTAH, INC., et al., Reorganized Debtors.**

**UNITED MINE WORKERS OF AMERICA COMBINED FUND, et al., Appellants,**

**v.**

**CF & I FABRICATORS OF UTAH, INC., et al., Appellees.**

**Bankruptcy No. 90B–6721.**
**No. 93C–180W.**

United States District Court,
D. Utah,
Central Division.

July 12, 1994.

George W. Pratt, Jerome Romero, Jones, Waldo, Holbrook & McDonough, Mark F. James, James C. Swindler, Kimball, Parr, Waddoups, Brown & Gee, Salt Lake City, UT, William F. Hanrahan, Lonie A. Hassel, Groom and Nordberg, Chartered, Peter Buscemi, Morgan, Lewis & Bockus, Washington, DC, Jami Wintz McKeon, Morgan, Lewis & Bockus, Philadelphia, PA, Paul A. Green, Marilyn A. Baker, Beins, Axelrod, Osborne, Mooney & Green, David W. Allen, Kenneth M. Johnson, Barbara E. Locklin–George, United Mine Workers of America Combined Benefit Fund, Washington, DC, for plaintiffs/appellants/petitioners.

Stephen J. McCardell, Kenneth L. Cannon, II, Penrod W. Keith, Kevin C. Marcoux, LeBoeuf, Lamb, Greene & MacRae, Salt Lake City, UT, Eunice Lin Bumbardner, Frank Cummings, LeBoeuf, Lamb, Leiby & MacRae, Washington, DC, for defendants/respondents.

*AMENDED ORDER GRANTING MOTION TO DISMISS APPEAL ON THE GROUNDS OF MOOTNESS*

WINDER, Chief Judge.

This matter is before the court on a motion to dismiss a consolidated bankruptcy appeal on mootness grounds filed by Reorganized Debtor CF & I Fabricators of Utah, Inc., *et al.* ("CF & I")[1] against Appellants The Unit-

1. The following debtors are referred to in this memorandum decision and order collectively as "CF & I": (1) Reorganized CF & I Steel Corporation; (2) Reorganized CF & I Fabricators, Inc.; (3) Reorganized Kansas Metals Company; (4) Reorganized Albuquerque Metals Company; (5) Reorganized Denver Metals Company; (6) Reorganized Pueblo Railroad Service Company; (7)

ed Mine Workers of America Combined Benefit Fund and The 1992 United Mine Workers of America Benefit Plan (collectively referred to as the "Funds" or the "Appellants"). A hearing on CF & I's motion was held on June 7, 1994. At the hearing, CF & I was represented by Steven J. McCardell, Kenneth L. Cannon II, and Penrod W. Keith. The United Mine Workers of America Combined Benefit Fund was represented by William F. Hanrahan and James C. Swindler. The 1992 United Mine Workers of America Benefit Plan was represented by Marilyn Baker, Jami McKeon, George W. Pratt, and Jerome Romero.

Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties relating to CF & I's motion to dismiss. The court also had read certain of the authorities cited by each of the parties. Following oral argument, and after taking CF & I's motion under advisement, the court has further considered the law and facts related to CF & I's motion to dismiss. Having now fully considered the issues in this case, and good cause appearing, the court enters the following memorandum decision and order.[2]

## I. BACKGROUND

Reorganized CF & I and/or its predecessors have been in the business of both iron and steel production since 1882. Until No-

vember 1983, CF & I Steel Corporation ("CF & I Steel"), a CF & I affiliate and integrated steel producer, also owned and operated several unionized coal mines which supplied its facilities with power and raw materials.[3] In November 1983, CF & I Steel sold its coal mines to the Wyoming Fuel Company.

It is CF & I Steel's prior ownership of coal mines that forms the backdrop for the present dispute between CF & I and the Funds. As owner and operator of the mines, CF & I Steel employed miners affiliated with and organized by the United Mine Workers of America ("UMWA"). In addition, CF & I Steel entered into several collective bargaining agreements with the UMWA, the last of which was the National Bituminous Coal Agreement entered into by CF & I Steel and the UMWA in 1981 ("1981 wage agreement").[4] Finally, during the entire time in which it owned the mines and continuing for almost ten years after the mines were sold, CF & I Steel provided health care benefits to all of the UMWA-represented retirees who had worked in its mines.[5]

On November 7, 1990, CF & I and its related debtors filed a voluntary Chapter 11 petition in the United States Bankruptcy Court.[6] Soon thereafter, and as discussed more fully below, CF & I Steel and Oregon Steel Corporation ("Oregon Steel") began ne-

Reorganized CF & I Steel Fabricators of Colorado, Inc.; and (8) The Reorganized Colorado/Wyoming Railway Company.

**2.** This Amended Order Granting Motion to Dismiss Appeal on the Grounds of Mootness is entered to correct several minor factual errors brought to the attention of the court by a letter dated July 11, 1994 from the attorney for CF & I. There are no changes in this Amended Order from the original Order dated July 5, 1994, except as described in the July 11, 1994 letter. The substance of the court's decision is unchanged.

**3.** The coal mines were located in Colorado and were named the Allen and Maxwell Mines.

**4.** The 1981 wage agreement between CF & I Steel and UMWA local union 9856 became effective on April 1, 1981 and expired on November 30, 1984.

**5.** Approximately 224 UMWA-represented retirees of CF & I Steel and their dependents received

health and life insurance benefits during this time period.

However, on March 30, 1992, CF & I Steel commenced an adversary proceeding in the Bankruptcy Court against the UMWA, alleging that its duty to provide health benefits had been extinguished in November of 1983 when the mines were sold. See CF & I Steel Corp. v. Connors, Adv.Pro. No. 92PB–2129 (Bankr. D.Utah, filed March 30, 1992). Moreover, CF & I Steel alleged that it was entitled to a refund of the cost of health benefits it provided to retired miners after it sold its mines. Id. These issues are now the subject of cross motions for summary judgment filed by CF & I Steel and the UMWA in the United States Bankruptcy Court for the District of Utah.

**6.** This was after the 1981 wage agreement had expired and also after CF & I had sold its mines to the Wyoming Coal Company.

gotiations for the sale of CF & I's steel operations.[7]

Subsequently, on. October 24, 1992, the Coal Act was signed into law. *See* Coal Industry Retiree Health Benefits Act of 1992, Pub.L. No. 102–486, 106 Stat. 2766, 3036–3056 (codified at 26 U.S.C.A. §§ 9701–9722 (Supp.1994)). The Coal Act contains three major components. First, section 9702 of the Coal Act establishes the Combined Fund and merges the UMWA 1950 and 1974 Benefit Plans into the Combined Fund effective February 1, 1993. *See* 26 U.S.C.A. § 9702 (Supp.1994).[8] Second, section 9712 of the Coal Act establishes the 1992 Benefit Plan, which also became effective on February 1, 1993. *Id.* § 9712. The 1992 Benefit Plan is a new entity designed to provide benefits to eligible UMWA retirees who are not in the Combined Fund and who are not receiving benefits from their former employer.[9] *Id.* Finally, section 9711 of the Coal Act mandates that signatories to the 1978 National Bituminous Coal Wage Agreement ("NBCWA") and successor NBCWA's who were maintaining an individual employer health plan on February 1, 1993 continue to maintain such plans for employees retiring on or after January 1, 1976. *Id.* § 9711.[10] CF & I then filed a plan of reorganization in the Bankruptcy Court on October 15, 1992.[11] In essence, the plan called for CF & I to sell the steelmaking assets of CF & I Steel to Oregon Steel as a going concern. However, CF & I L.P., the entity set up by Oregon

Steel to purchase CF & I Steel's assets, required that several matters be included in the Bankruptcy Court's Confirmation Order before it would agree to purchase CF & I Steel. First, CF & I L.P demanded that a plan of reorganization be filed with the Bankruptcy Court by October 15, 1992. Second, CF & I L.P demanded that its purchase of CF & I Steel under a confirmed plan be consummated no later than March 31, 1993.[12] Finally, and most importantly for purposes of this case, CF & I L.P. demanded that, with limited exceptions, its purchase of CF & I Steel's assets be "free and clear" of claims of creditors, including specifically any claims that the Funds might have against the new company under the Coal Act. *See, e.g.,* Confirmation Order, Exhibit 1B, Asset Purchase Agreement, ¶¶ 2.3, 10.4, 10.13, & 12.1, *In re CF & I Fabricators of Utah, Inc.,* No. 90B–6721 (Bankr.D.Utah Feb. 12, 1993).

A January 25, 1993 bar date was then set by the Bankruptcy Court in which the Funds were to assert their claims against CF & I or forever be barred.[13] This date, however, was some seven days *prior* to when the Combined Fund and the 1992 Benefit Plan (*i.e.,* the Funds) were to officially become effective under the provisions of the Coal Act. Therefore, in a January 14, 1993 hearing, the Funds asked the Bankruptcy Court to reschedule the bar date and give them more time to file their claims (if any existed)

---

7. As discussed *infra,* these negotiations eventually resulted in a proposed plan of reorganization for CF & I funded largely by the proceeds of the sale of CF & I's steel assets to Oregon Steel and by the proceeds from the operation of those assets in the future.

8. The Combined Fund provides health and death benefits to coal industry retirees who, as of July 20, 1992, were eligible to receive benefits from the 1950 or 1974 Benefit Plans. *See* 26 U.S.C.A. § 9702 (Supp.1994). The Combined Fund, of course, is one of the parties in this case.

9. Companies with retirees in the 1992 Benefit Plan are required to pay monthly premiums for their eligible beneficiaries. *Id.* § 9712(d). The 1992 Benefit Plan is also one of the parties in this case.

10. The Funds' contend on appeal that this provision obligates CF & I L.P. (the so called "successor" of CF & I Steel) to pay the health and life

insurance benefits of those coal miners that were previously employed in CF & I's Colorado coal mines under the 1981 agreement.

11. The discussions and litigation that led up to CF & I's plan of reorganization were exhaustive. For example, by early November of 1993, the reorganization plan had produced 86 adversary proceedings, numerous hearings before the Bankruptcy Court, and 15 appeals to the district court.

12. This deadline was later extended to April 30, 1993 by agreement of the parties.

13. A hearing was held in the Bankruptcy Court on December 16, 1992 to set the January 25, 1993 bar date. However, while CF & I gave notice of the hearing to the UMWA and some of the Funds' trustees, it did not give notice to the Funds themselves because they were not yet in existence. The validity of that notice is one of the issues the Funds raise on this appeal.

against CF & I. The Bankruptcy Court, however, denied the Funds' requests. It found that because some of the trustees of the Funds were already identified, it was not impossible for the Funds "to protect the interests of the fund and of its people who may be claiming against it by filing a claim by the 25th." *See* Transcript of Hearing on Reconsideration of Motion to Fix Bar Date at 25, *In re CF & I Fabricators of Utah, Inc.,* No. 90B–6721 (Bankr.D.Utah Jan. 14, 1993).

Subsequently, on January 25, 1993 (the date Coal Act claims were due pursuant to the Bankruptcy Court's Bar Date Order), counsel for the Combined Fund filed on behalf of the Combined Fund a pleading entitled "Proof of Claim," and counsel for the 1992 Benefit Plan filed on behalf of the 1992 Benefit Plan a pleading entitled "Statement of Trustees of 1992 UMWA Benefit Plan in Lieu of Proof of Claim or, in the Alternative, Proof of Claim." In these pleadings, each Fund argued in essence that because they were not as yet in existence under the Coal Act, they could not have a "claim" to assert against CF & I under the Coal Act. *See* Brief of Appellants The 1992 United Mine Workers of America Benefit Plan and its Trustees at 24, *In re CF & I Fabricators of Utah, Inc.,* No. 93–C–180W (D.Utah Sept. 7, 1993). Accordingly, each Fund argued that not only did the Bankruptcy Court err in forcing them to file a claim prior to their coming into existence, but the Bankruptcy Court lacked jurisdiction under the Bankruptcy Code to hear and discharge their potential *future* Coal Act claims against CF & I. *Id.* Alternatively, and in addition to the above arguments, each Fund submitted their Coal Act claims against CF & I, with the Combined Fund asserting claims of approximately $50 million and the 1992 Benefit Plan asserting claims of approximately $30 million against CF & I.

Judge Boulden of the Bankruptcy Court then conducted a confirmation hearing on January 27, 1993.[14] After an all-day hearing, Judge Boulden rendered an oral decision that the plan should be confirmed and denied all objections to the plan. She also made extensive findings of fact and conclusions of law on the record in arriving at that conclusion. She found, for example, that CF & I L.P. was a "good faith purchaser" of CF & I Steel's assets and that the assets were being sold for a fair price. *See* Confirmation Order at ¶¶ 20, 21, *In re CF & I Fabricators of Utah, Inc.,* No. 90B–6721 (Bankr.D.Utah Feb. 12, 1993). Moreover, Judge Boulden found that the Funds had claims against CF & I, that the Funds had filed those claims by the bar date, and that their claims were unsecured claims. She then estimated the claimed priority portion of the claims at $0. *See* Confirmation Hearing Transcript at 152–55, 165–66, 173–78, *In re CF & I Fabricators of Utah, Inc.,* No. 90B–6721 (Bankr.D.Utah Jan. 27, 1993).

CF & I's counsel then circulated a proposed version of the Confirmation Order and the Estimation Order to all interested parties. Soon thereafter, on February 9, 1993, the Funds filed with the Bankruptcy Court their objections to the substance and form of the orders.[15] At a hearing conducted on February 12, 1993, the Bankruptcy Court considered the Funds' procedural and substantive objections and rejected them. The Bankruptcy Court also entered CF & I's proposed form of order as the Confirmation Order later that same day.

The March 3, 1993 effective date of the plan of reorganization then came to pass, and CF & I and the other debtors started to implement the plan. To date, hundreds of transactions, including sales and transfers of property and payments to creditors, have been implemented pursuant to Judge Boulden's Confirmation Order. Indeed, payments to creditors under the plan have exceeded $13,000,000 in cash alone. Moreover,

---

**14.** On the previous day, January 26, 1993, CF & I had filed an objection to the Funds' proofs of claim and requested the Bankruptcy Court to estimate the claimed priority portion of the claims at $0. On that same day, the Combined Fund filed an objection to CF & I's plan of reorganization and to the shortened notice it had received. The Bankruptcy Court considered both of these objections the next day at the plan's confirmation hearing.

**15.** The Funds' objections were substantially similar (if not identical) to the objections they now raise in this court on appeal.

thousands of parties holding both claims against and interests in CF & I have had their rights and responsibilities settled under the Confirmation Order,[16] and only about twenty-one percent of CF & I's assets are left to be distributed.

Meanwhile, in February and March of 1993, the Funds filed appeals in this court seeking to overturn the Bankruptcy Court's Bar Date and Confirmation Orders. In essence, the Funds again allege that the Bankruptcy Court violated their due process and statutory rights by fixing the bar date on January 25, 1993, because that date was before the Funds "came into existence, had a claim against, or [became] creditors of the debtor." *See* Brief of Appellants, The United Mine Workers of America Combined Benefit Fund and its Trustees at 2–3, *In re CF & I Fabricators of Utah, Inc.,* No. 93–C–180W (D.Utah Sept. 8, 1993). Moreover, the Funds also allege that the Bankruptcy Court lacked statutory authority under the Bankruptcy laws and the Coal Act to confirm CF & I's plan of reorganization, because the plan released and discharged CF & I from liability to the Funds for potential Coal Act claims and enjoined the Funds from seeking to enforce Coal Act claims against any party in the future.[17] *Id.* The Funds did not, however, seek to stay consumation of CF & I's plan by filing a supersedeas bond with this court when they filed their appeals.[18]

Before the court could address the merits of the Funds' arguments on appeal, CF & I filed a motion to dismiss the appeals on the grounds of mootness. Pared to its basics, CF & I's argument is as follows: (1) because CF & I's plan of reorganization has been "substantially consummated," this court could not grant the Funds any effective relief on appeal even if it were to rule favorably for them on the merits; (2) moreover, regardless of the extent of consummation, this court must dismiss the Funds' appeals as moot pursuant to the "safe harbor provision" of section 363(m) of the Bankruptcy Code because the Funds have not sought a stay of the plan and CF & I has sold its assets to a "good faith purchaser."

The Funds, of course, challenge CF & I's contention that their appeals are moot. The Funds argue that they do not wish to overturn the sale of CF & I Steel to CF & I L.P., but merely wish to overturn Judge Boulden's injunction barring them from asserting future Coal Act claims against CF & I L.P. Thus, they argue, this court *can* grant effective relief regardless of the amount of "consummation" under CF & I's plan and regardless of the fact that they did not seek a stay of the plan prior to their appeals to this court.[19]

## II. *STANDARD OF REVIEW*

In reviewing the bankruptcy court's decisions in this case, this court must "apply the same standards of review as those governing appellate review in other cases." *In re Perma Pac. Properties,* 983 F.2d 964, 966 (10th Cir.1992). This court therefore must affirm the bankruptcy court's findings of fact unless those findings are clearly erroneous. *In re Davidovich,* 901 F.2d 1533, 1536 (10th Cir.1990).[20] Where the bankruptcy court has made conclusions of law, however, this court is required to conduct a de novo review of

16. For example, CF & I's stock has been cancelled and former stockholders have taken worthless stock deductions for those cancelled shares.

17. The Funds also appeal the Bankruptcy Court's February 19, 1993 Estimation Order which valued the Funds' claims against CF & I at $0. *See* Brief of Appellants, The United Mine Workers of America Combined Benefit Fund and its Trustees at 3, *In re CF & I Fabricators of Utah, Inc.,* No. 93–C–180W (D.Utah Sept. 8, 1993). Because this issue is inextricably woven into the argument above, however, the court only mentions it here for clarity.

18. Nor did the Funds seek a stay of the plan in the Bankruptcy Court when it asked Judge Boulden to reconsider her Confirmation and Estimation Orders in February of 1993.

19. The Funds also argue that if this court finds their appeals are moot, it should order the Bankruptcy Court to vacate the Bar Date and Estimation Orders and let them challenge the Bankruptcy Court's findings on those issues again.

20. A finding of fact is clearly erroneous when the court, after reviewing the record, is "left with the conviction that a mistake has been made." *Le-Maire v. United States,* 826 F.2d 949, 953 (10th Cir.1987).

the record and reach an independent legal conclusion. *Id.* at 1536.[21] Finally, because certain matters in bankruptcy are left entirely to the discretion of the bankruptcy judge,[22] this court may reverse a decision on those issues only if the bankruptcy court abused its discretion. *See, e.g., Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563–64 (7th Cir.1984).[23]

## III. *DISCUSSION*

 The dispositive issue in this case is whether the Funds' appeals should be dismissed as moot under 11 U.S.C. § 363(m). The issue is dispositive because, if the appeals are moot, this court must dismiss them without a ruling on the merits for a lack of mootness is a jurisdictional requirement to any federal case or controversy. *See Beattie v. United States,* 949 F.2d 1092, 1093 (10th Cir.1991) ("The mootness question necessarily constitutes our threshold inquiry, because the existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts.").

 Section 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchases or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease *was stayed pending appeal.*

*See* 11 U.S.C.A. § 363(m) (1993) (emphasis added). In this case, there is no question but that CF & I's sale of CF & I Steel to CF & I L.P. met the statutory prerequisites for invoking section 363(m). First, the sale was made pursuant to and under the authority of section 363(b). *See* Confirmation Order at 9, ¶¶ 18, 19, *In re CF & I Fabricators of Utah, Inc.,* No. 90B–6721 (Bankr.D.Utah Feb. 12, 1993). Moreover, the Bankruptcy Court found that CF & I's planned reorganization was proposed in good faith. *Id.* at 6, ¶ 7. Finally, the Court specifically found, on undisputed evidence, that CF & I L.P. was a good faith purchaser. *Id.* at 9–10, ¶¶ 20, 21. " 'A good faith purchaser is one who buys in good faith and for value.' " *In re Frontier Energy Resources, Inc.,* No. 93–5020, 1993 WL 390983, at *2 (10th Cir. Oct. 6, 1993) (quoting *Tompkins v. Frey (In re Bel Air Assocs., Ltd.),* 706 F.2d 301, 304–05 (10th Cir.1983)). This is a factual finding that cannot be overturned by the court unless clearly erroneous. *See, e.g., In re Southwest Prods., Inc.,* 144 B.R. 100, 102 (9th Cir.BAP 1992) (citing *In re Sasson Jeans, Inc.,* 90 B.R. 608, 610 (S.D.N.Y.1988)). Suffice it to say that that burden has not been met here by the Funds. *See In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1173 (9th Cir.1988) (defining lack of good faith as " 'fraud, collusion, ... or an attempt to take grossly unfair advantage of other bidders.' ") (quoting *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985)).[24]

Thus, the only real issue in this case is whether the Funds' failure to seek a stay of the Bankruptcy Court's orders pursuant to

---

**21.** However, in reviewing mixed questions of law and fact, this court conducts a de novo review only if the question involves primarily legal principles. *See In re Wes Dor Inc.,* 996 F.2d 237, 241 (10th Cir.1993) (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 940 F.2d 564, 572 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 589, 116 L.Ed.2d 614 (1991)). If the question involves primarily a factual inquiry, this court applies the clearly erroneous standard. *Id.*

**22.** For example, the decision to confirm, deny, or vacate the sale of a debtor's property in within the bankruptcy court's sole discretion. *See, e.g., In re Chung King, Inc.,* 753 F.2d 547, 549 (7th Cir.1985).

**23.** A bankruptcy court abuses its discretion when either (1) its decision is based on erroneous conclusions of law, (2) its factual findings are clearly erroneous, or (3) when the record contains no evidence to support the judge's conclusions. *See In re AM Int'l, Inc.,* 67 B.R. 79, 81 (Bankr. N.D.Ill.1986).

**24.** Indeed, there is no evidence before this court at all to suggest that CF & I L.P. or Oregon Steel ever acted wrongly, let alone that they acted with the sort of "flagrant misconduct" required to overturn a judicial sale on the grounds of bad faith. *See Chicago Inv. Group Equity Sec. Holders Comm. v. Chicago Inv. Group,* No. 88–C–1885, 1988 WL 117295, at *4 (N.D.Ill. Oct. 26, 1988).

Rule 8005 of the Rules of Bankruptcy [25] renders their appeals of those orders moot under section 363(m). For the reasons outlined below, the court finds that it does, and that the Funds' appeals should therefore be dismissed.

Section 363(m) is designed to foster two independent but related policies in bankruptcy law. *In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir.1990); *In re Chateaugay Corp.*, No. 92 Civ. 7054 (PKL), 1993 WL 159969, at *3 (S.D.N.Y. May 10, 1993). First, the section affords "finality to judgments by protecting good faith purchasers, the innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids." *In re Stadium Management Corp.*, 895 F.2d at 847 (quoting *In re Tri–Cran, Inc.*, 98 B.R. 609, 617 (Bankr.D.Mass.1989)). Thus, a stay is important under this theory because, "[w]ithout the degree of finality provided by the stay requirement, purchasers are likely to demand a steep discount for investing in the property." *In re Sax*, 796 F.2d 994, 998 (7th Cir.1986).[26] The second reason why dismissal of an appeal pursuant to section 363(m) once a sale has been consummated is appropriate is because "the court has no remedy that it can fashion even if it would have determined the issues differently." *In re*

*Stadium Management Corp.*, 895 F.2d at 847–48; *Weatherford v. Bonney*, No. 92–CV–417–S, 1993 WL 307925, at *1 (10th Cir. Aug. 12, 1993) ("Generally, an appeal should be dismissed as moot when events occur which prevent the court of appeals from granting effective relief."). This theory "is broader" than the finality rule, "and stresses a court's general jurisdictional bar from deciding cases in which it cannot provide a remedy." *In re Stadium Management Corp.*, 895 F.2d at 848. Finally, the aforementioned policies are interrelated because the rule of finality limits the remedies that an appellate court can provide, as the court "cannot order relief without compromising the integrity of the sale of the property to a good faith purchaser." *Miami Ctr. Ltd. Partnership v. Bank of New York*, 820 F.2d 376, 379 (11th Cir. 1987), *cert. denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).[27]

The Funds raise several arguments as to why this case is not moot under section 363(m) and the policies it is designed to serve.[28] The Funds argue, for example, that because CF & I's Coal Act claims have never "ripened" or become due in this case, there is nothing for the Funds to seek a stay from. This argument is flawed for several reasons. First, the undisputed facts in this

---

**25.** Rule 8005 provides that "[a] motion for a stay of the judgment, order or decree of a bankruptcy judge ... pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." *See* Fed.R.Bankr.P. 8005.

Rule 8005 also authorizes the bankruptcy judge to issue stays sua sponte and provides for application to the district court or bankruptcy appellate panel for a stay pending appeal if such relief cannot be obtained from the bankruptcy judge. *Id.* At no time in the course of these proceedings have the Funds ever taken advantage of this rule.

**26.** The reason we want good-faith purchasers to pay full price for a debtor's property, of course, is so that creditors of the debtor will not be short-changed. *See Chicago Inv. Group Equity Sec. Holders Comm. v. Chicago Inv. Group*, No. 88–C–1885, 1988 WL 117295, at *4 (N.D.Ill. Oct. 26, 1988) ("Without the measure of finality provided by this rule, purchasers would demand a discount in the price of the debtor's property, thereby short-changing creditors.").

**27.** One court argues that these two policies are not related at all. *See West End Assocs., L.P. v.*

*Sea Green Equities*, 166 B.R. 572, 575–76 (D.N.J. 1994). That court then goes on to find, however, that even though the policies are different "they appear to reach the same result." *Id.* at 576.

**28.** As a threshold matter, the Funds remind the court that a "[f]ailure to seek a stay pending appeal does not automatically lead to a dismissal for mootness." *See, e.g.*, Brief of Appellants, the United Mine Workers of America Combined Benefit Fund and its Trustees in Opposition to Appellees' Motion to Dismiss Appeal for Mootness at 6, *In re CF & I Fabricators of Utah, Inc.*, No. 93–C–180W (D.Utah Dec. 23, 1993). This contention is undoubtedly correct. *See, e.g., In re Pub. Serv. Co. of New Hampshire*, 963 F.2d 469, 473 (1st Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992).

Nonetheless, in the absence of a stay, interested parties are free to implement a confirmed reorganization plan according to its terms. Because of this fact, "a plan of reorganization, once implemented, should be disturbed only for *compelling* reasons." *See In re UNR Indus., Inc.*, 20 F.3d 766, 768 (7th Cir.1994) (emphasis added) (citations omitted).

case show that the Funds did, *in fact*, present some $80 million in Coal Act claims to the Bankruptcy Court.[29] Thus, to allow the Funds to argue now that they did not have Coal Act claims against CF & I would be to allow them to speak out of both sides of their collective mouths.[30]

More troubling than this, however, is the Funds' misunderstanding of the power a bankruptcy court has over *all* potential "claims" in bankruptcy. For example, the Funds argue that the Bankruptcy Court erred in characterizing CF & I's Coal Act obligations as "claims" and then discharging them, because they were merely *future* month-to-month obligations that hadn't yet come due. Judge Easterbrook's opinion in *In re UNR Industries, Inc.*, 20 F.3d 766 (7th Cir.1994), however, clearly addresses that argument and rejects it.

█ In *In re UNR Industries,* former employees of several asbestos manufacturers had had their rights to future medical payments for asbestos-related injuries determined in the manufacturers' plans of reorganization. *Id.* at 767–68. The employees then appealed those dispositions, alleging that the court lacked power under the Bankruptcy Code to treat them as "creditors" because their injuries had not yet even manifested themselves. *Id.* at 770. In rebuffing that argument, Judge Easterbrook wrote:

> 11 U.S.C. defines as a "claim" every "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, disputed, undisputed, legal, equitable, secured or unsecured." *The definition is capacious, to say the least. Attaching labels such as "contingent" and unmatured" and "disputed" to the interests of persons who will* become sick in the future because of exposure to … asbestos therefore does not put those interests beyond the power of the bankruptcy court.

*Id.* (emphasis added). The same can be said here. Just because CF & I's obligations to the Funds might not yet have matured under the Coal Act does not mean the Bankruptcy Court was powerless to address them in CF & I's plan of reorganization. And while the Bankruptcy Court might have been substantively wrong in finding that the sale of CF & I's assets should be "free and clear" of any future Coal Act claims the Funds might have against the new company, that does not make a difference in determining whether the appeals in this case are moot under section 363(m). *See In re Frontier Energy Resources, Inc.*, No. 93–5020, 1993 WL 390983, at *2 (10th Cir. Oct. 6, 1993) (" 'Section 363(m) … does not say that the sale must be proper under 363(b); it says the sale must be authorized under 363(b). … At this juncture, *it matters not whether the authorization was correct or incorrect.*' " (emphasis added) (citing *In re Sax*, 796 F.2d 994, 997–98 (7th Cir.1986)).[31] Indeed, for the Funds to argue that this case is not moot merely because the Bankruptcy Court erred in approving the *terms* of a "good faith" sale turns section 363(m)'s stay requirement on its head. *See In re Gilchrist*, 891 F.2d 559, 560–61 (5th Cir.1990) (finding that the question raised on appeal, *i.e.*, whether the bankruptcy court had subject matter jurisdiction to order a sale free and clear of the appellants' interests, was mooted by their failure to seek a stay of that order). Accordingly, this court finds that the Funds' appeals are moot under section 363(m) *regardless* of whether the Bankruptcy Court erred in approving the sale of CF & I Steel to Oregon Steel, because

---

**29.** The Bankruptcy Court later found the claimed priority portion to be valueless, but that is of course irrelevant to the issue of whether a claim was ever presented.

**30.** Indeed, no one forced the Funds to submit their claims to the Bankruptcy Court, and thus no one but the Funds are to blame if the Bankruptcy Court valued the claimed priority portion of those claims at $0. Indeed, filing seems to have been merely a strategic gamble taken by the Funds in an effort to secure some of the "CF & I pie" up front.

**31.** Indeed, the court expresses no opinion on whether, *in fact*, CF & I's Coal Act obligations were dischargeable in bankruptcy. Rather, the point of all this is that, regardless of whether the Bankruptcy Court was correct or not, the Funds could have sought a stay of the Bankruptcy Court's Confirmation Order while they got a ruling on the dischargeability of CF & I's Coal Act obligations from this court on the merits. They did not, and now find themselves in the unenviable position of trying to resurrect those claims in this court.

the Funds failed to seek a stay of that sale and it has since been substantially consummated.

The next argument the Funds make as to why this case is not moot involves equitable considerations. In essence, they argue that this case is not moot because this court can grant them "effective relief"—by allowing them to assert future Coal Act claims against CF & I L.P.—without upsetting the sale of CF & I's steel making assets to Oregon Steel.[32] This argument must also fail. First, the Funds fail to properly respect the need for finality in bankruptcy sales to protect the reliance interests of good faith purchasers such as Oregon Steel—regardless of the court's raw ability to grant "effective relief." Indeed, many courts have held that section 363(m) is an absolute bar to appeal in cases like this where those challenging a confirmation sale fail to seek a stay, regardless of whether the court can grant "effective relief." *See, e.g., In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1172 (9th Cir.1988) ("Finality in bankruptcy has become the dominant rationale for our decisions; the trend is towards an absolute rule that requires appellants to obtain a stay before appealing a sale of assets."). Indeed, as Judge Posner noted in *In re Edwards,* 962 F.2d 641, 643 (7th Cir.1992), "[i]f purchasers at judicially approved sales of property of a bankrupt estate, and their lenders, cannot rely on the deed that they receive at the sale, it will be difficult to liquidate bankrupt estates" at all. Thus, the interests in finality alone weigh heavily in favor of a finding of mootness in this case.

Moreover, even if the court were wrong in its assessment of the finality argument, it is *in fact* powerless to grant the Funds "effec-

tive relief," at least not without undoing a plan that has admittedly been substantially and effectively consummated.[33] As the facts in this case make abundantly clear, the sale of CF & I Steel to Oregon Steel was *expressly conditioned* on Oregon Steel taking those assets *"free and clear"* of claims of creditors, including present and future claims by the Funds under the Coal Act. *See, e.g.,* Confirmation Order, Exhibit 1B, Asset Purchase Agreement, ¶¶ 2.3, 10.4, 10.13, & 12.1, *In re CF & I Fabricators of Utah, Inc.,* No. 90B–6721 (Bankr.D.Utah Feb. 12, 1993). This condition was contained in CF & I's plan of reorganization, and was made part of Judge Boulden's opinion approving the sale. Thus, to now read out of the sale Oregon Steel's express requirement that the sale be "free and clear" of creditors' claims would upset the very bargain that CF & I and Oregon Steel entered into in the first place.[34] It also would likely unravel the deal altogether, putting the parties back at square one. Such a prospect is unacceptable, and this court refuses to play the "Humpty Dumpty repairman" for such an ominous task. Indeed, if the court were to grant the Funds' wishes, incalculable inequity would surely result for those "innocent third parties who have extended credit, settled claims, relinquished collateral and transferred or acquired property in legitimate reliance on [Judge Boulden's] unstayed order of confirmation." *See In re Pub. Serv. Co. of New Hampshire,* 963 F.2d 469, 475 (1st Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992) (quoting *In re Texaco,* 92 B.R. 38, 45 (S.D.N.Y.1988)).

Accordingly, the Funds' appeals of the Bankruptcy Court's Confirmation and Bar

---

**32.** This argument is really just a version of the one asserted by the Funds above. In essence, what the Funds are arguing is that it is not the *sale* of CF & I's assets that they object to, but merely the sale of those assets *free and clear* of future Coal Act obligations.

**33.** The Funds do not contend that the sale of CF & I Steel to Oregon Steel has not been "substantially consummated." Rather, they argue that, regardless of the amount of consummation, this court can grant them effective relief from the Bankruptcy Court's orders.

**34.** The case of *In re Stadium Management Corp.,* 895 F.2d 845 (1st Cir.1990), is precisely on point.

There, the appellants contended "that they [had] not appealed from the sale motion and [were] not attempting to unravel the sale," but were merely appealing rulings permitting the purchaser to assume a profitable lease of a football stadium while rejecting an advertising contract for signs in the same stadium. *Id.* at 846–47. In rebuffing that argument, the court found that "the sale and related motions were considered together and remain a package. They all affect aspects of the deal of which a purchaser would want to be certain prior to completing the purchase...." *Id.* at 848.

Date Orders are moot because the Funds failed to seek a stay of those orders as required by section 363(m) of the Bankruptcy Code and the sale of CF & I Steel to Oregon Steel has since been substantially consummated. Therefore, and based on the foregoing reasons, IT IS HEREBY ORDERED AS FOLLOWS:

1. CF & I's motion to dismiss the Funds' appeals is hereby granted.

2. The United Mine Workers of America Combined Benefit Fund's appeal of the Bankruptcy Court's Bar Date Order and its Confirmation Order is hereby dismissed.

3. The 1992 United Mine Workers of America Benefit Plan's appeal of the Bankruptcy Court's Bar Date Order and its Confirmation Order is hereby dismissed.

4. CF & I is awarded its costs.