OPINION OF THE COURT
ROTH, Circuit Judge:
This appeal requires us to determine whether Chapter 11 of the Bankruptcy Code authorizes a debtor to cure or modify a foreclosure judgment obtained under New Jersey law. The bankruptcy court concluded that it does and thereby denied appellee Midlantic National Bank’s motion requesting relief from the automatic stay. Midlantic appealed to the district court, which reversed the decision of the bankruptcy court. We will affirm the district court’s decision insofar as it holds that a Chapter 11 debtor may not cure a default on a home mortgage following a foreclosure judgment in New Jersey. Because we agree with the bankruptcy court that Chapter 11 allows a debtor to modify such a foreclosure judgment, however, we will reverse the decision of the district court on that issue.
I.
Midlantic holds a first purchase money mortgage, executed by the debtor Jean R. DeSeno and her ex-husband Stefano T. De-Seno and dated November 19, 1979, on the property which is Ms. DeSeno’s residence. Pursuant to a judgment of divorce on April 20, 1992, title to the property was transferred solely to Ms. DeSeno. On August 20, 1991, Midlantic obtained a foreclosure judgment in the Superior Court of New Jersey on the mortgage. Pursuant to the judgment, the court issued a writ of execution directing the Sheriff of Monmouth County to sell the property in order to satisfy the judgment. The Sheriff scheduled the sale for March 2, 1992; however, at the request of Ms. DeSeno the sale was postponed until March 30. On March 25, 1992, prior to the foreclosure sale, Ms. DeSeno filed her petition for protection under Chapter 11 of the Bankruptcy Code.
On September 9, 1992, Midlantic filed a motion for relief from the automatic stay, arguing, inter alia, that it was entitled to relief from the stay under this court’s decisions in In re Roach, 824 F.2d 1370 (3d Cir.1987), and First Nat’l Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir.1991). On October 19, 1992, the bankruptcy court entered an order denying Midiantic’s motion on the basis of its conclusion that Roach and Perry do not apply in Chapter 11 cases.
Midlantic appealed this order to the district court. On April 5, 1993, the district court vacated the bankruptcy court’s order, reasoning that Roach and Perry do apply in Chapter 11 cases, and remanded the case to that court. On- May 3, 1993, Ms. DeSeno filed a timely appeal. The bankruptcy court has stayed all proceedings in the case pending the outcome of this appeal.
II.
The district court had jurisdiction over the appeal from the bankruptcy court’s final order denying Midiantic’s request for relief pursuant to 28 U.S.C. § 158(a). We have jurisdiction over this appeal from the final order of the district court pursuant to 28 U.S.C. § 158(d). Because this appeal concerns the appropriateness of the legal standards applied by the district and bankruptcy courts, our review is plenary. Perry, 945 F.2d at 62.
III.
Both Chapter 11 and Chapter 13 authorize a debtor’s bankruptcy plan to provide for the “curing or waiving of any default.” 11 U.S.C. §§ 1123(a)(5)(G) & 1322(b)(3). See also 11 U.S.C. § 1322(b)(5). In Roach, 824 F.2d at 1376, this court observed that “[§] 1123 of Chapter 11 and § 1322 of Chapter 13 are parallel provisions, and we believe it very likely that Congress’ understanding of the *644 authorization to cure defaults in each was identical.” Based on this understanding, we looked to the text and legislative history of 11 U.S.C. §§ 1123 & 1124 to guide our interpretation of the scope of the authorization to cure defaults in Chapter 13. We restated and relied on that reasoning in Appeal of Capps, 836 F.2d 773, 775-76 (3d Cir.1987). The Second Circuit has also concluded that the concept of “curing a default” has the same meaning in Chapters 7, 11, and 13. In re Taddeo, 685 F.2d 24, 28-29 (2d Cir.1982).
In Roach, we held that “§ 1322(b) must be read in the context of state law and ... its right to cure a default on a mortgage on a home located in New Jersey terminates upon entry of a foreclosure judgment.” 824 F.2d at 1373. We reasoned that § 1322(b)(5) authorized the curing of a default only in a contractual relationship, which, under New Jersey law, ceases to exist following a foreclosure judgment. Since the mortgage no longer exists, its default can no longer be cured, and the mortgagee’s rights arise solely from the judgment. Moreover, we noted that the rights in the property created by a foreclosure judgment are of a different nature than those established by the mortgage in that the foreclosure judgment makes the entire amount of the debt immediately due and payable out of the proceeds of the sale of the property. Because we could find no “statutory language, legislative history, or a significant federal interest mandating federal interference with state foreclosure judgments,” id. at 1378-79, we held “that in New Jersey the right to cure a default on a home mortgage under § 1322(b) does not extend beyond the entry of a foreclosure judgment.” Id. at 1379.
We decline to reconsider our conclusions in Roach and we will specifically extend our holding in that case to Chapter 11. Neither the text of the statute, the legislative history, nor the policies animating the Bankruptcy Code suggest that the concept of “curing a default” should be ascribed any more than a single, consistent meaning throughout the Code. Thus, absent a change in New Jersey’s law concerning foreclosure judgments, we will not re-examine our holding that entry of a foreclosure judgment on a New Jersey home mortgage terminates a debtor’s right to cure a default on that mortgage. In this case, Midlantic has obtained a foreclosure judgment on Ms. DeSeno’s mortgage. As a result, her right to cure her default on the mortgage has terminated, and Midlantic cannot be prevented from lifting the stay on this basis.
IV.
We must next consider whether a Chapter 11 debtor has the authority to provide for modification of a foreclosure judgment as part of a plan of reorganization.[2] The modification power is found in § 1123(a), which provides in relevant part:
Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
[[Image here]]
(5) provide adequate means for the plan’s implementation, such as—
[[Image here]]
(E) satisfaction or modification of any lien;
(F) cancellation or modification of any indenture or similar instrument....
The district court concluded that this provision does not give a debtor the authority to *645 modify a foreclosure judgment created under New Jersey law. It based this conclusion on its observation that the Code provides separate definitions for “lien” and “judicial lien.” “Lien” is defined as a “charge against or interest in property to secure payment of a debt or performance of an obligation.” 11 U.S.C. § 101(37). A “judicial lien” is a “lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.” 11 U.S.C. § 101(36). These separate definitions, the court concluded, signify that “a chapter 11 debtor has authority to modify any lien or indenture, but does not have specific authority to modify a judicial lien.” Midlantic Nat’l Bank v. DeSeno, Civil No. 92-4902, 1993 WL 513212 mem. op. at 6 (D.N.J. April 5, 1993).
We believe the district court erred in reaching this conclusion. The definition of judicial lien, by making an internal reference to the concept of “lien,” suggests not that a judicial lien is something distinct from a lien generally, but instead that it is a part of that larger class. As a result, a reference to “any lien” surely includes judicial liens. This interpretation finds support in the legislative history. The section-by-section analysis of the Report of the Senate Judiciary Committee contains the following comments on the definitions of “lien” and “judicial lien”:
Paragraph (27) defines “judicial lien.” It is one of three kinds of liens defined in this section. A judicial lien is a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. Paragraph (28) defines “lien.” The definition is new and is very broad. A lien is defined as a charge against or interest in property to secure payment of a debt or performance of an obligation. It includes inchoate liens. In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhausetive [sic] except for certain common law liens.
Senate Rep. No. 95-989, 1978 U.S.C.C.A.N. 5787, 5811. This confirms what seems evident from the text of the statute — -that “judicial liens” are part of the broader class of “liens” generally. Furthermore, it shows that the district court’s reasoning — that separate definitional sections must mean separate concepts — would mean that only “certain common law liens” could be modified, as virtually every other type of lien falls within one of the three separately defined categories of liens.
We also note that, to the extent that judicial liens, security interests, and statutory liens are mutually exclusive categories, as the quoted legislative history suggests, the district court incorrectly characterized the foreclosure judgment as a judicial lien. In Perry, 945 F.2d at 64-65, we concluded that “a New Jersey home mortgage lender retains a security interest for the purposes of § 1322(b)(2) following the entry of a foreclosure judgment.” Id. at 65. We reasoned that a foreclosure judgment, since it is the product of the mortgage agreement, is created by this agreement, and thus is a “security interest” within the definition provided in 11 U.S.C. § 101(51).[3] As such, it cannot also be a judicial lien.
Nevertheless, our analysis remains the same under the assumption that a foreclosure judgment is a security interest rather than a judicial lien. The Code’s definition provides that a security interest is a “lien created by an agreement.” 11 U.S.C. § 101(51). Here again, the internal reference to the concept of “lien” compels the conclusion that the reference in § 1123(a)(5)(E) to “any lien” includes rather than excludes security interests. And the above-quoted legislative history, which provides that security interests are part of the *646 broader concept of liens, further supports this conclusion.
Midlantic also argues that Ms. DeSe-no should not be allowed to modify the foreclosure judgment because Congress could not have meant for debtors to be able to thwart the rights of mortgagees simply by using Chapter 11 rather than Chapter 13. In contrast to the blanket authorization of modifications found in Chapter 11, 11 U.S.C. § 1322(b)(2) states that a debtor’s plan may not provide for the modification of “a claim secured only by a security interest in real property that is the debtor’s principal residence.” By allowing Chapter 11 debtors to modify foreclosure judgments, Midlantic asserts, we would defeat Congress’ purpose in giving special protection to home mortgagees.
We find the Supreme Court’s analysis in Toibb v. Radloff, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), in which it held, based on the plain language of the Code, that Chapter 11 is available to individuals not engaged in business, helpful in considering this argument. In Toibb the Court made the following observation in addressing a similar argument:
Amicus notes that allowing a consumer debtor to proceed under Chapter 11 would permit the debtor to shield both disposable income and nonexempt personal property. He argues that the legislative history of Chapter 11 does not reflect an intent to offer a consumer debtor more expansive protection than he would find under Chapter 13, which does not protect disposable income, or Chapter 7, which does not protect nonexempt personal assets. As an initial matter, it makes no difference whether the legislative history affirmatively reflects such an intent, because the plain language of the statute allows a consumer debtor to proceed under Chapter 11.
Id. at-, 111 S.Ct. at 2201.
Here, as in Toibb, the plain language of the statute allows a debtor to provide for the modification of any liens in his Chapter 11 plan of reorganization. By singling out home mortgages in § 1322(b)(2), Congress demonstrated both that it understood unqualified language authorizing the modification of liens or security interests to include the modification of home mortgages and that it was capable of limiting that language. As the Court noted in Toibb, “differences in the requirements and protections of each Chapter reflect Congress’ appreciation that various approaches are necessary to address effectively the disparate situations of debtors seeking protection under the Code.” Id. Election of Chapter 11 over Chapter 13 for purposes of avoiding the anti-modification rule is not without its costs. The Chapter 11 process is more complicated and expensive for the debt- or. In addition, Chapter 11 creditors whose rights are impaired by a proposed plan are entitled to vote on whether that plan should be accepted. As a result, as one commentator has pointed out, “[i]n developing a Chapter 11 plan a debtor ... must balance the advantages of materially impairing a residential mortgagee’s nonbankruptcy law rights against the likelihood that this will cause the mortgagee vigorously to oppose confirmation.” Richard F. Dole, Jr., Preserving Rights in a Home Through Bankruptcy, 4 Bankr.Dev.J. 1, 31 (1987). In light of these considerations and the conspicuous absence of any anti-modification provision in Chapter 11, we decline to write such a provision into the Code based on assertions that Congress would have done so had it considered the problem. Accord In re Kennedy, 158 B.R. 589, 596 (Bankr.D.N.J.1993).
V.
For the foregoing reasons, the decision of the district court will be affirmed to the extent of its ruling that Ms. DeSeno is not authorized to cure her default on her home mortgage but will be reversed to the extent that it held that Ms. DeSeno may not modify Midiantic’s foreclosure judgment in her Chapter 11 plan. The case will be remanded to the district court, for remand by it to the bankruptcy court, for further proceedings consistent with this opinion.
*647 Before: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, Circuit Judges, and FULLAM, District Judge[1].

. The parties, as well as the bankruptcy and district courts, have characterized this issue as being whether our holding in Perry applies in Chapter 11. We do not believe this to be a fruitful way to frame the issue. In Peny we held "that after a foreclosure judgment has been entered on a New Jersey home mortgage, Chapter 13 does not authorize a plan calling for payment of that judgment over the three to five years of the plan.” 945 F.2d at 61. We concluded that such a plan provision would constitute a modification of the mortgagee’s rights in violation of 11 U.S.C. § 1322(b)(2), which provides that a plan may
modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor’s principal residence....
Unlike their provisions concerning the curing of defaults, the provisions concerning modification in Chapters 11 and 13 are very different. The provision on which we based our holding in Perry simply does not exist in Chapter 11. Our analysis in Peny, therefore, provides only tangential guidance to our resolution of the issue in this case.

. Our conclusion in Perry that the foreclosure judgment is created by the mortgage agreement does not conflict with our holding in Roach that a contractual relationship between mortgagor and mortgagee ceases to exist following the entry of a foreclosure judgment. As we noted in Perry:
Even though the contractual terms between the parties in this case have merged into the entry of judgment of foreclosure, the security interest or lien against the property continues to be the product of the consensual arrangement between debtor and lender.
Perry, 945 F.2d at 64 (quoting In re Brunson, 87 B.R. 304, 311 (Bankr.D.N.J.1988)).