**In re Kwan and Betty CHU, Debtors.**

**Nos. 99–45054 TG, RS 01–0018.**

United States Bankruptcy Court,
N.D. California.

Jan. 31, 2001.

Lewis Phon, San Francisco, CA, for debtors.

Edward A. Kunnes, The Law Office of David A. Boone, San Jose, CA, for Creditors.

## MEMORANDUM OF DECISION

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The above-captioned debtors (the "Debtors") move to avoid the lien of Creditors Kin Lam Tse and Yuk Mui Tse ("Creditors") on their residence pursuant to 11 U.S.C. § 522(f)(1)(A). Creditors seek relief from the automatic stay in the above-captioned case to foreclose their lien pursuant to 11 U.S.C. § 362(d)(1). For the reasons specified below, the Court will deny the Debtors' motion and grant the Creditors' motion.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

The Debtors own a residence located in Alameda County, California (the "Residence"). The Residence is encumbered by a first deed of trust (the "First Deed of Trust") in favor of Bank of America. In 1991, the Creditors loaned $60,000 to the Debtors' corporation, Grand Orient Incorporated ("Grand Orient"). Grand Orient executed a promissory note in favor of the Creditors (the "Note") evidencing the debt (the "Debt"), and the Debtors executed a deed of trust (the "Deed of Trust") in favor of the Creditors granting them a security interest in the Residence to secure the Debt. The Deed of Trust was duly recorded in 1991.

The Debtors failed to repay the Debt as required by the Note. The Creditors filed an action for judicial foreclosure against Grand Orient and the Debtors. In May 1999 the Creditors obtained a judgment of foreclosure and order of sale (the "Judgment") against Grand Orient and the Debtors.

The Judgment includes the following provisions:

1. Grand Orient is declared to be indebted to the Creditors in specified amounts.

2. The Residence is ordered sold and, after payment of court costs and costs of the levy and sale, the proceeds paid to the Creditors with interest at the rate of ten percent per annum from the date of the judgment.

3. The Creditors are declared entitled to a deficiency judgment against Grant Orient. The court retains jurisdiction to determine the amount of the deficiency judgment.

4. The sale of the Residence is declared to be subject to the right of redemption.

5. Once the deed is delivered by the levying officer to the purchaser at the sale, the rights of defendants and all persons claiming under them after the execution of the Deed of Trust and, once the redemption period has elapsed, all such parties' equity of redemption shall be extinguished.

▉ On June 16, 1999, before the Residence was sold at a judicial foreclosure sale, the Debtors filed a chapter 13 bankruptcy case. On July 19, 1999, the Debtors filed a chapter 13 plan (the "Plan"). The only secured creditor the Plan proposed to pay as such was Bank of America. Under the section entitled optional provisions, the Plan stated that: "The judgment lien of Kin Lam Tse and Yuk Mui Tse will be avoided to the extent it impairs the homestead exemption of debtors." The Creditors were served with a summary of the Plan and did not file an objection to it. In accordance with the Court's procedures, therefore, the Plan was confirmed without being set for hearing on August 30, 1999.[1]

---

1. At the hearing on the motion, it was suggested that the Creditors' lien had already been avoided pursuant to the Plan. This contention is without merit. The use of the term "will" in the optional provision in the Plan implied that some further action will be taken to avoid the Creditors' lien. Since the Debtors drafted the Plan, ambiguous language must be interpreted in the manner least favorable to them. *In re Miller*, 253 B.R. 455, 459 (Bankr.N.D.Cal.2000).

On November 17, 2000, the Debtors filed a motion to avoid the Creditors' lien on the Residence pursuant to 11 U.S.C. § 522(f)(1)(A) on the ground that it was a judicial lien that impaired their homestead exemption. On December 6, 2000, the Creditors filed an opposition to the Debtors' motion and requested a hearing. On January 4, 2001, the Debtors filed a motion for relief from the automatic stay. The motion for relief came on for preliminary hearing on January 12, 2001. Both parties appeared and the Court took the matter under submission.[2] Because the motion for relief from stay and the motion to avoid the Creditors' lien present the same issues and are fully briefed, the Court considers both motions to be under submission and, therefore, addresses and rules on both motions in this memorandum.

## DISCUSSION

■ In their motion, the Debtors contend that the Creditors hold a judicial lien on the Residence and that the Debtors are entitled to avoid it pursuant to 11 U.S.C. § 522(f)(1)(A). The principal issue presented by these motions is whether the Creditors' lien qualifies as a judicial lien within the meaning of § 522(f)(1)(A).[3] A "judicial lien" is defined in 11 U.S.C. § 101(36) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."

2. On January 16, 2001, the Creditors sent a letter to the Court citing additional authorities. The Court authorized the submission of the letter brief. However, there was no evidence that a copy of this letter was served on the Debtors. Therefore, this letter constitutes an improper ex parte contact, and the Court will not consider it.

3. The meaning of "impairment" is set forth in § 522(f)(2). Assuming the Debtors' valuation of the Residence is accurate and the Creditors' lien is a judicial lien, § 522(f)(2) would permit the Debtors to avoid the Creditors' lien. The Creditors contend that the Debtors have substantially undervalued the Residence but have submitted no competent evidence to support this contention. However, because the Court concludes that the Creditors' lien is

The Debtors concede that, prior to the issuance of the foreclosure judgment, the Deed of Trust was a security agreement rather than a judicial lien. Courts have consistently held that these categories are mutually exclusive. *In re DeSeno*, 17 F.3d 642, 645 (3rd. Cir.1994); *In re County of Orange*, 189 B.R. 499, 502 (C.D.Cal.1995). Section 522(f)(1)(A) does not authorize avoiding a security interest on the ground that it impairs the debtor's exemption. However, the Debtors contend that, when a judgment of judicial foreclosure is issued, the deed of trust merges with the judgment. At that point, the Debtors contend, the lien becomes a judicial lien that may be avoided under § 522(f)(1)(A). The Debtors cite no authority for this contention.[4]

The Creditors do not appear to contest the first point made by the Debtors: i.e., that when a foreclosure judgment is issued, the deed of trust merges with the judgment. However, they dispute the Debtors' contention that this changes the nature of the lien from a consensual lien into a judicial lien. By contrast with the Debtors, the Creditors cite three Third Circuit Court of Appeals decision as authority for their position: *In re Johns*, 37 F.3d 1021 (3rd Cir.1994); *In re DeSeno*, 17 F.3d 642 (3rd Cir.1994); and *First National Fidelity Corp. v. Perry*, 945 F.2d 61 (3rd Cir.1991).[5]

not a judicial lien, the Court need not reach the issue of valuation.

4. However, the Debtors' position is not without some judicial support. In *First National Fidelity v. Perry*, 945 F.2d 61, 63 (3rd Cir. 1991) (a case cited by the Creditors), the *Perry* court notes that, in *In re Coleman*, 82 B.R. 15, 18 (Bankr.D.N.J.1988), a bankruptcy court concluded that § 1322(b)(2) did not apply to a security interest that had been reduced to a foreclosure judgment pre-petition because the foreclosure judgment was not a lien created by an agreement and therefore did not qualify as a "security interest" under the Bankruptcy Code.

5. They also cite two bankruptcy court decisions: *In re Laws*, 163 B.R. 449, 452 (E.D.Pa.

The holdings by all three courts on the primary issues raised in those cases have since been statutorily overruled. However, these statutory changes do not detract from the three courts' preliminary conclusions that a security interest does not become a judicial lien upon issuance of a judgment of judicial foreclosure.[6]

In *Perry,* a creditor whose claim was secured only by the debtor's residence had reduced its claim to a foreclosure judgment pre-petition. The debtor filed a plan that proposed to pay the secured claim in full during the term of the plan. The *Perry* court considered whether this constituted an unlawful modification of a debt secured only by the debtor's residence. 11 U.S.C. § 1322(b)(2). The court concluded that it did and declined to confirm the plan. *Id.* 945 F.2d at 65–67.

The debtor contended that § 1322(b)(3) did not apply because once the foreclosure judgment was issued, the security interest was transformed into a judicial lien. The *Perry* court concluded that the issue was a close one. However, for policy reasons, given the purpose of § 1322(b)(2), the *Perry* court concluded that it was not. *Id.,* 945 F.2d at 64–65. The *Perry* court reasoned that it was unlikely that Congress would wish the special protections given to home mortgages to terminate upon issuance of a foreclosure judgment. *Id.,* 945 F.2d at 65.

While 11 U.S.C. § 1322(b)(2) is not at issue here, the same reasoning applies.

Section 522(f)(1)(A) permits a debtor to avoid only judicial liens, not liens created by agreement. It seems unlikely that Congress would wish to prohibit avoidance of consensual liens prior to issuance of a foreclosure judgment but to permit avoidance after issuance of such a judgment.

■ Moreover, there is another reason for rejecting the Debtors' argument. As stated in *In re Schlecht,* 36 B.R. 236, 240 (Bankr.Alaska 1983):

> The doctrine of merger is one aspect of the larger principle of res judicata. [Citation omitted.] The general rule of merger is that when a valid and final personal judgment is rendered in favor of the plaintiff, the plaintiff cannot maintain a subsequent action on any part of the original **claim.** [Citation omitted.] The original **claim** merges into the judgment. The effect of the merger is that the **old debt** ceases to exist and the new judgment debt takes its place. [Emphasis added.]

From this discussion, the Court concludes that, when a claim based on a security interest is reduced to judgment, while the claim may merge into the judgment, the security interest remains intact unless the judgment expressly cancels or avoids it. Here, the Judgment does not cancel or avoid the Deed of Trust.

## CONCLUSION

For the reasons stated above, the Court concludes that the Creditors hold a securi-

1994); and *Matter of Smith,* 156 B.R. 11 (Bankr.D.N.J.1993). These lower court decisions simply cite and follow the authority of the higher courts without separate analysis.

6. The legislative history to the Bankruptcy Reform Act of 1994 indicates that certain changes to § 1322 were made for the express purpose of overruling *Perry* and *In re Roach,* 824 F.2d 1370 (3rd Cir.1987). 140 Cong.Rec. H10,769 (October 4, 1994). *Roach* held that a default on a secured claim could not be cured after a judicial foreclosure judgment had been issued. As discussed above, *Perry* held that 11 U.S.C. § 1322(b)(2), prohibiting modification of a claim secured only by the debtor's residence, barred payment of a se-

cured claim that had been reduced to a foreclosure judgment pre-petition. Sections 1322(c)(1) and (2) now expressly permit the cure of a secured claim after the issuance of a foreclosure judgment as long as the petition is filed before the foreclosure sale occurs. The Bankruptcy Reform Act of 1994 also statutorily overruled the primary issue addressed in *DeSeno:* i.e., whether a default on a security interest that had been reduced to a foreclosure judgment could be cured over time through a chapter 11 plan. The *DeSeno* court held that it could be. The Bankruptcy Reform Act of 1994 closed that loophole by adding § 1123(b)(5) which prohibits the modification of a debt secured only by the debtor's principal residence in a chapter 11 case.

ty interest in the Residence despite the fact that their claim was reduced to a foreclosure judgment pre-petition. Because 11 U.S.C. § 522(f)(1)(A) does not permit the Debtors to avoid a security interest on the ground that it impairs their homestead exemption, their motion to avoid the Deed of Trust will be denied. Furthermore, because the Plan does not provide for payment of the Debt during its term, the Creditors' security interest is not adequately protected, and their motion for relief from the automatic stay will be granted. The Court has already signed a previously lodged order granting Creditors relief from the automatic stay. Counsel for Creditors is directed to submit a proposed form of order denying the Debtors' motion to avoid their lien.