

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>GERALD N. REED and BEATRICE J.<br>REED,<br><br>      Debtors. | BAP No. CC-21-1181-FLT<br><br>Bk. No. 9:09-bk-14594-DS |
| GERALD N. REED; BEATRICE J. REED,<br>      Appellants,<br>v.<br>HENRIK NIELSEN,<br>      Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

APPEARANCES:

Michael A. Jones of M Jones and Associates, PC on brief for appellants.

Before: FARIS, LAFFERTY, and TAYLOR, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Chapter 7[1] debtors Gerald N. Reed and Beatrice J. Reed appeal the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

bankruptcy court's order determining that creditor Henrik Nielsen did not violate the discharge injunction. The Reeds argue that a judgment in Mr. Nielsen's prepetition judicial foreclosure action transformed a secured obligation into a wholly in personam debt that was subsequently discharged in their bankruptcy case.

The Reeds' arguments have no merit. We AFFIRM. We publish to explain that a bankruptcy discharge has no effect on a foreclosure judgment in a California judicial foreclosure proceeding.

## FACTS

### A.     Prepetition events

In May 2007, the Reeds executed a promissory note for $292,500 and a deed of trust encumbering real property located in San Miguel, California (the "Property"). Mr. Nielsen holds the note and is the beneficiary under the deed of trust. The promissory note provided for an interest rate of fourteen percent per annum.

The Reeds defaulted on the promissory note. Mr. Nielsen filed a complaint in California state court to foreclose on the deed of trust. In his prayer for relief, he asked the superior court to enter judgment for the amount due on the note and requested "that the deed of trust be foreclosed and the usual judgment be made for the sale of the property according to law, by the levying officer; that the proceeds be applied to the amounts due plaintiff . . . ."

The superior court entered a default judgment in Mr. Nielsen's favor.

2

The form judgment provided that "**Defendant . . . must pay** plaintiff on the complaint" a total of $331,002.25. (Emphasis added.) An attached Judgment of Foreclosure and Order of Sale provided "that **in addition to the monetary damages** set forth in the Judgment[,]" the Property will be sold, the levying officer will pay Mr. Nielsen the judgment amount, and the surplus would be paid to the Reeds. (Emphasis added.)

B.    **The Reeds' chapter 7 case**

Months later, the Reeds filed a chapter 7 petition. They scheduled the judgment debt in favor of Mr. Nielsen as an unsecured nonpriority claim in the amount of $331,017. In their statement of financial affairs, they mentioned a "levy by creditor" and a "money judgment" in favor of Mr. Nielsen based on "Debtors Guarantors of Loan."

The Reeds received their chapter 7 discharge in March 2010, and the bankruptcy court closed the Reeds' case.

C.    **The alleged violations of the discharge injunction**

Mr. Nielsen continued his collection efforts against the Property. In March 2011, the superior court issued a writ of sale concerning the Property. The Sheriff's Office recorded a notice of levy and a notice of sale.

The Reeds filed in the superior court a motion to quash the writ of sale and levy. The superior court enjoined the Sheriff's Office from selling the Property.

In April 2012, the superior court ruled that the 2009 default judgment was defective because the post-judgment interest rate of fourteen percent

3

exceeded the statutory interest rate. The superior court quashed the writ of sale and vacated the levy without prejudice.

Mr. Nielsen filed an application for a modified default judgment. The proposed judgment corrected the post-judgment interest rate and also specified that the default judgment was a non-deficiency judgment due to the Reeds' chapter 7 discharge. The Reeds opposed Mr. Nielsen's application, arguing that the 2009 judgment was defective and void ab initio, so Mr. Nielsen never held a perfected lien prepetition and the discharge voided the judgment.

On July 31, 2012, the superior court issued a "non-deficiency court default judgment foreclosing on [the Reeds'] property." It ordered that "[a] decree of Judicial Foreclosure will be entered against [the Reeds] in favor of [Mr. Nielsen] for the secured amount of $331,002.25." It further ordered that the Property "or so much of it as may be necessary, will be sold[,]" that "the levying officer will pay to plaintiff[ ] . . . the amount due plaintiff" and that "[t]here shall be no judgment for deficiency."

The Reeds twice moved the superior court to set aside the 2012 judgment. The superior court rejected these requests, and the Reeds appealed.

The California Court of Appeal affirmed the superior court's ruling to adjust the interest rate in the 2009 judgment but held that the superior court lacked authority to modify the 2009 judgment to address the availability of a deficiency judgment. It ordered the superior court to set

4

aside the 2012 judgment and issue an order striking the post-judgment interest rate from the 2009 judgment. Other than the change of the interest rate, the 2009 judgment, including the attached Judgment of Foreclosure and Order of Sale, remained intact.

Mr. Nielsen resumed his foreclosure efforts, and the superior court issued another writ of sale. A few days before the scheduled foreclosure sale, the Reeds filed a new chapter 7 petition. After Mr. Nielsen sought and obtained relief from the automatic stay, the Sheriff's Office sold the Property on April 10, 2019. A few weeks later, the bankruptcy court granted the Reeds their discharge and closed the case.

**D.    The Reeds' first motion for sanctions**

In April 2020, the Reeds filed in their 2009 bankruptcy case a motion for an order to show cause why Mr. Nielsen should not be held in contempt for his alleged violation of the discharge injunction. They took the view that the 2009 state court judgment was an in personam money judgment because it provided that the Reeds "must pay" Mr. Nielsen and directed the levying officer to pay Mr. Nielsen the judgment debt from the proceeds of the sale. They argued that the March 2010 discharge had discharged all liability to Mr. Nielsen, including the foreclosure judgment. They concluded that the chapter 7 discharge "voided the judicial foreclosure judgment that had been entered against the Debtors in 2009 and thus invalidated the purported conveyance and sale of the property by the Sheriff. As a result of the judgment being void, the Debtor's [sic]

5

interest in the subject property remains intact and vested in the Debtor [sic]."

The bankruptcy court denied the motion without prejudice. It ruled that the Reeds had failed to demonstrate that the discharge had extinguished the secured debt owed to Mr. Nielsen.

## E.     The Reeds' second motion for sanctions

The Reeds were undeterred. They filed another motion seeking damages for the alleged discharge violation (the "Sanctions Motion").

The Sanctions Motion expanded on the factual and procedural history of the case. The Reeds argued that: (1) Mr. Nielsen did not have a secured interest in the Property because the March 2009 judgment was not recorded prior to the petition date; (2) the March 2010 discharge discharged the 2009 judgment, which was an in personam money judgment by the terms of the order; and (3) Mr. Nielsen's post-discharge collection actions violated the discharge injunction.

The bankruptcy court held a hearing on the Sanctions Motion. Only the Reeds appeared. The bankruptcy court began by reminding the Reeds' counsel of his "ethical obligations and obligations under [Civil] Rule 11 to put forth legal theories that are based in reality, because I think that that is where the motion really falls short."

Nevertheless, the Reeds insisted that the 2009 judgment was an in personam money judgment. They reasoned that the judgment "indicates directly that the plaintiff is entitled to recover the dollar amount, $331,000

6

from the Debtors[,]" and as a result "the Reed family then becomes personally liable on that event." They argued that California foreclosure law "creates an in personam judgment against the individual debtors, that the judgment creditor is then authorized to collect through levy that's done through that state-issuance process." They concluded that, pursuant to § 524, the discharge voided the 2010 judgment.

The bankruptcy court rejected the Reeds' argument as "completely unsupported by the law." It stated that the dollar amount in the 2009 judgment did not transform the judgment into a simple money judgment. It explained that there was a loan, a consensual lien, a default, and a foreclosure judgment with a specific dollar amount that allows the creditor to sell the property to satisfy the judgment. It quoted the U.S. Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 82-83 (1991), for the proposition that a secured creditor may foreclose on the debtor's real property securing the loan and that right survives the bankruptcy discharge. It held that the Reeds failed to show that the foreclosure judgment established any personal liability that was discharged.

The court similarly rejected the Reeds' argument that a security interest becomes a judicial lien upon issuance of a judgment of judicial foreclosure. It quoted *In re Chu*, 258 B.R. 206, 209 (Bankr. N.D. Cal. 2001): "[W]hen a claim based on a security interest is reduced to judgment, while the claim may merge into the judgment, the security interest remains intact unless the judgment expressly cancels or avoids it." The court further

7

explained that a consensual lien "doesn't just disappear."

Accordingly, the bankruptcy court denied the Sanctions Motion. The Reeds timely appealed.[2]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in holding that Mr. Nielsen did not violate the discharge injunction and denying the Sanctions Motion.

## STANDARDS OF REVIEW

An award or denial of sanctions for an alleged violation of the discharge injunction is reviewed for an abuse of discretion. *See Nash v. Clark Cnty. Dist. Att'y's Office (In re Nash)*, 464 B.R. 874, 878 (9th Cir. BAP 2012). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without

---

[2] Mr. Nielsen did not file a timely answering brief. Instead, he filed a very late motion for leave to file a brief and to postpone oral argument. We removed the appeal from the oral argument calendar and took under advisement the balance of his motion. Upon review of the Reeds' appellate brief and the record on appeal, we have determined that briefing from Mr. Nielsen and oral argument are unnecessary and DENY the remainder of his motion.

support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

"The scope of the bankruptcy discharge injunction is a mixed question of law and fact to be reviewed either de novo or for clear error, depending upon whether questions of law or questions of fact predominate." *Mellem v. Mellem (In re Mellem)*, 625 B.R. 172, 177 (9th Cir. BAP 2021), *aff'd*, No. 21-60020, 2021 WL 5542226 (9th Cir. Nov. 26, 2021). This appeal largely involves questions of law, so our review is de novo. Similarly, we apply de novo review to the bankruptcy court's statutory interpretation of § 524(a). *In re Nash*, 464 B.R. at 878.

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

The Reeds argue that the discharge bars the foreclosure of Mr. Nielsen's deed of trust. This argument is frivolous. It misrepresents (1) the effect of the bankruptcy discharge, (2) the plain terms of the 2009 judgment, and (3) the effect of a foreclosure judgment in a California judicial foreclosure proceeding.

### A. The bankruptcy discharge does not affect a creditor's in rem rights.

Section 727(a) provides that, if all requirements are satisfied, "[t]he [bankruptcy] court shall grant the debtor a discharge." The discharge

"voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor" with respect to a discharged debt, and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]" § 524(a)(1), (2). "The discharge injunction survives the bankruptcy case and applies permanently with respect to every debt that is discharged." *Garske v. Arcadia Fin., Ltd. (In re Garske)*, 287 B.R. 537, 542 (9th Cir. BAP 2002).

But the discharge only affects the debtor's "personal liability." It does not affect a creditor's in rem rights, such as a lien created by a deed of trust. *See Johnson*, 501 U.S. at 82-83 (explaining that the bankruptcy "discharge extinguishes only 'the personal liability of the debtor.' . . . [A] creditor's right to foreclose on the mortgage survives or passes through the bankruptcy" (quoting § 524(a)(1))). We have repeatedly relied on the U.S. Supreme Court's *Johnson* decision. *See In re Garske*, 287 B.R. at 542 (holding that, "in cases where the creditor holds a secured interest in property subject to a scheduled debt, a discharge extinguishes only the personal liability of the debtor"); *see also Cortez v. Am. Wheel, Inc. (In re Cortez)*, 191 B.R. 174, 178 (9th Cir. BAP 1995) (holding "that valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt" (citing *Dewsnup v. Timm*, 502 U.S. 410, 418 (1992))).

In short, the Reeds' discharge had no effect at all on Mr. Nielsen's

10

right to foreclose the lien created by the deed of trust.

**B.      The 2009 judgment enforced, and did not destroy, Mr. Nielsen's in rem rights.**

The Reeds' arguments on appeal all rest on their false premise that the 2009 judgment was solely an in personam debt. They assert that the face of the 2009 judgment evidences the creation of a personal debt because it directs that they "must pay" Mr. Nielsen and distinguishes between the "money damages" and the order to sell the Property, such that "any proceeds from the sale . . . would be applied to the personal liability of the debtors." Additionally, they argue that the writs of sale support their position, because the writs refer to the Reeds as "judgment debtors" and purport to apply the proceeds of the sale to the "satisfaction of a judgment."

The Reeds' arguments simply ignore a large portion of the 2009 judgment: the attached Judgment of Foreclosure and Order of Sale. The superior court decided how much money the Reeds owed to Mr. Nielsen in conjunction with the foreclosure of the lien created by the deed of trust. *See generally Doughty v. Holder*, Case No. 2:13-CV-00295-LRS, 2014 WL 220832, at *5 (E.D. Wash. Jan. 21, 2014) (stating, in the context of the FDCPA, that "a 'foreclosure judgment,' even though it involves a monetary amount, is for the purpose of enforcing the creditor's security interest through a foreclosure. It is *quasi in rem*. The monetary amount establishes the bid

11

parameters for the foreclosure sale").[3]

The Reeds' arguments imply that the portion of the 2009 judgment deciding the amount of the Reeds' debt to Mr. Nielsen somehow extinguished the deed of trust. This is obviously false: if the Reeds were right, the superior court would not have also decreed the foreclosure of the deed of trust. There is no authority for the proposition that the 2009 judgment extinguished the lien created by the deed of trust and transformed the Reeds' secured obligation to Mr. Nielsen into an entirely personal liability.

## C. The Reeds' arguments are inconsistent with California's judicial foreclosure process.

The Reeds' arguments ignore fundamental principles of California foreclosure law and procedure.

California law allows secured creditors two options to enforce a secured obligation: "The beneficiary may bring an action for judicial foreclosure or pursue a nonjudicial foreclosure, also known as a trustee's sale, pursuant to the power of sale granted in the deed of trust." *Robin v. Crowell*, 55 Cal. App. 5th 727, 743 (2020) (citations omitted); *see also Oxford St. Prop., LLC v. Rehab. Assocs., LLC*, 206 Cal. App. 4th 296, 304 n.3 (2012)

---

[3] The 2009 judgment also recognized the Reeds' personal liability to Mr. Nielsen; when the judgment was entered, the Reeds had not received a discharge, so their personal liability still existed. The bankruptcy discharge only voided the 2009 judgment "to the extent [the judgment was] a determination of the personal liability" of the Reeds. *See* § 524(a)(1). The discharge had no effect on the 2009 judgment to the extent it recognized and enforced the Reeds' in rem obligations under the deed of trust.

12

("A beneficiary may pursue either remedy of judicial or nonjudicial foreclosure or both at the same time. However, once the property is sold at a trustee's sale, the beneficiary cannot claim a deficiency judgment in the judicial foreclosure proceeding."); 5 Cal. Real Est. § 13:155 (4th ed.) ("The remedies available under the power of sale and under judicial foreclosure can be exercised alternatively or concurrently. A beneficiary can pursue either remedy, or it can institute both methods of foreclosure at the same time and subsequently select one method and complete it at any time prior to a sale.").

If the creditor elects a judicial foreclosure, the creditor "initiate[s] . . . a lawsuit [under California Code of Civil Procedure ("CCP") section 725a]. . . . [T]he lender must prove that the subject loan is in default and the amount of default. If the lender proves its case, the court can order the sale of the property to satisfy the borrower's debt [under CCP section 726]." *Coker v. JPMorgan Chase Bank, N.A.*, 62 Cal. 4th 667, 672 (2016) (citations and quotation marks omitted). In a judicial foreclosure, the creditor may seek a deficiency judgment against the debtor for the difference between the amount of debt in the decree of foreclosure and the sale price. *See Robin*, 55 Cal. App. 5th at 743.

If the creditor chooses a nonjudicial foreclosure pursuant to California Civil Code sections 2924-2924*l*, the creditor avoids a court proceeding and relies on the deed of trust's power-of-sale clause: "In exercising that power [of sale], the beneficiary is not enforcing a lien

13

through judicial action but is invoking the beneficiary's authority to demand that the trustee of the property sell the property for the beneficiary's benefit." *Trenk v. Soheili*, 58 Cal. App. 5th 1033, 1041 (2020), *as modified* (Dec. 22, 2020). "The sale is governed by a comprehensive set of statutory provisions. The trustor has no right of redemption after the sale, and the creditor may not seek a deficiency judgment." *Robin*, 55 Cal. App. 5th at 743 (citations omitted). In other words, a creditor pursuing a nonjudicial foreclosure may not seek a personal money judgment following the foreclosure and sale of the property.

In this case, Mr. Nielsen chose to pursue a judicial foreclosure. He filed a complaint in state court to foreclose on the deed of trust. The superior court then entered a decree of foreclosure that allowed Mr. Nielsen to foreclose on the Property. *See* CCP section 726(a) ("[T]he court may, by its judgment, direct the sale of the encumbered real property . . . and the application of the proceeds of the sale to the payment of the costs of court, the expenses of levy and sale, and the amount due plaintiff . . . ."). In compliance with California law, the decree of foreclosure included the amount of indebtedness due to Mr. Nielsen. *See* CCP section 726(b) ("The decree for the foreclosure of a mortgage or deed of trust secured by real property . . . shall declare the amount of the indebtedness or right so secured . . . ."). Because the superior court had adjudged the amount due to Mr. Nielsen and ordered a sale of the Property, it issued a writ of sale to enforce the judgment. *See* CCP section 716.010(a) ("A

judgment for sale of real or personal property may be enforced by a writ of sale issued pursuant to Section 712.010.").

The California Court of Appeal explained this process in this very case. That court noted that "[a] judicial foreclosure action will often result in two separate judgments, first a decree of foreclosure that determines the amount of the debt and the availability of a deficiency judgment and orders a sale of the property, and second, an award of a deficiency judgment after the foreclosure sale." *Nielsen v. Reed*, Case No. H039647, 2016 WL 685231, at *4 (Cal. Ct. App. Feb. 19, 2016). It correctly highlighted that a decree of foreclosure is not a deficiency judgment: "Entry of a decree of foreclosure, even a decree declaring judgment debtors personally liable for a deficiency judgment, does not necessarily result in a deficiency judgment being entered." *Id.* at *5. It concluded that the 2009 judgment did not include any provisions for a deficiency judgment and noted that:

> [h]ad the foreclosure decree fulfilled the complaint's requests to order sale of the property and to allow a deficiency judgment against Debtors, Creditor would have been able to pursue Debtors' personal liability if the proceeds of the sale did not fully repay the outstanding loan. A creditor who is denied a deficiency judgment must look entirely to the property to satisfy the secured indebtedness.

*Id.* at *12.

In sum, the 2009 judgment was a foreclosure decree that enforced the deed of trust and did not supersede or destroy it.

It is true that the borrower in a judicial foreclosure proceeding can be

15

subjected to a personal liability. But this only occurs if there is a deficiency judgment after the foreclosure sale. *See* CCP section 726(b); *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1236 (1995) ("In a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale."). But Mr. Nielsen never sought or obtained a deficiency judgment.

The Reeds argue that Mr. Nielsen's entire claim, including his lien rights under the deed of trust, merged into the 2009 judgment, such that the deed of trust was replaced by a judicial lien. The bankruptcy court correctly rejected this argument.  As the court held in *Chu*, "a security interest does not become a judicial lien upon issuance of a judgment of judicial foreclosure." *In re Chu*, 258 B.R. at 209. The court explained that, "when a claim based on a security interest is reduced to judgment, while the claim may merge into the judgment, the security interest remains intact unless the judgment expressly cancels or avoids it." *Id.* at 209. It concluded that "the Creditors hold a security interest in the Residence despite the fact that their claim was reduced to a foreclosure judgment pre-petition." *Id.* at 209-10.

The court's reliance on *Chu* is sound and comports with the *Johnson*

16

holding.[4] Moreover, the Reeds' argument is absurd: if we were to accept their position, it would be impossible to conduct a judicial foreclosure of a lien against a discharged debtor, because the process always starts with a decree of foreclosure, like the 2009 judgment, determining that a debt is owed and the creditor is entitled to foreclose. Depriving the lien creditor of the right to a judicial foreclosure remedy would strip an important right of the lien creditor, and, as *Johnson, Garske, Chu*, and a host of other authorities hold, the discharge simply does not have that effect.

## D.   Mr. Nielsen did not violate California's "one-action" rule.

The Reeds argue that the bankruptcy court's ruling violated the one-action rule. They did not make this argument in the bankruptcy court, and we need not consider it in the first instance on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (we do not consider arguments and allegations raised for the first time on appeal).

Even if this argument were properly before us, we would reject it. The Reeds urge that Mr. Nielsen violated CCP section 726(a) because the 2009 judgment was a money judgment that precluded a subsequent foreclosure on the same instrument. *See* CCP section 726(a) ("There can be but one form of action for the recovery of any debt or the enforcement of

---

[4] The Reeds argue that *Chu, Johnson*, and other cases are inapposite, because they concern consensual liens, while Mr. Nielsen "didn't foreclose a consensual lien . . . . Creditor enforced a money judgment through an execution sale." This argument conveniently ignores the fact that the 2009 judgment provided for the foreclosure of a deed of trust, which is a consensual lien.

any right secured by mortgage upon real property . . . .”). This section "compels the secured creditor, in a single action, to exhaust its security judicially before it may obtain a monetary 'deficiency' judgment against the debtor." *Metropolitan Life Ins. Co. v. Sunnymead Shopping Ctr. Co. (In re Sunnymead Shopping Ctr. Co.)*, 178 B.R. 809, 815 (9th Cir. BAP 1995) (citation omitted); *see also Smyth v. City of Oakland (In re Brooks-Hamilton)*, 271 F. App'x 654, 658 (9th Cir. 2008) ("California's one action rule is an election of remedies statute. It requires a creditor seeking recovery of a debt secured by property to do so by foreclosing on the security; if a creditor chooses another form of action (remedy) for the recovery of the debt, for example by seeking a personal judgment against the debtor, the creditor waives his security interest in the property."). The Reeds completely ignore the fact that Mr. Nielsen did exactly what the one-action rule requires: he brought a single action to recover the debt and foreclose the deed of trust. *See Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*, Case No. 20-CV-03210-TSH, 2021 WL 916850, at *5 (N.D. Cal. Mar. 10, 2021) ("California law mandates that the lender only bring one action to recover a real estate secured debt, and that 'action' is the sale of the real property by way of foreclosure, applying the sale proceeds to repay the debt."); *In re Brooks-Hamilton*, 271 F. App'x at 659 (stating that "the one action rule applies where a creditor pursues an action to recover the underlying debt owed that is inconsistent with the remedy of foreclosure on its security").

## CONCLUSION

The bankruptcy court did not err in denying the Sanctions Motion, because it correctly held that the 2009 judgment was the first step in the foreclosure of the creditor's in rem rights, not merely a money judgment against the Reeds personally. Accordingly, Mr. Nielsen's post-discharge enforcement actions were not against the Reeds personally and did not violate the discharge injunction. We AFFIRM.