**In re HOSTESS BRANDS, INC., Debtors.**

No. 12–22052 (RDD).

United States Bankruptcy Court, S.D. New York.

June 22, 2012.

Corinne Ball, Jones Day, New York, NY, Frederick W. H. Carter, Venable, LLP, Baltimore, , Ira L. Herman, Thompson & Knight, LLP, New York, NY, Paul M. Hoffmann, Kansas City, MO, for Debtor.

Paul Kenan Schwartzberg, Office of the United States Trustee, New York, NY, U.S. Trustee.

Joshua K. Brody, Paul B. O'Neill, Thomas Moers Mayer, Kramer Levin Naftalis & Frankel LLP, New York, NY, Steven J. Reisman, Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, NY, for Official Committee of Unsecured Creditors of Hostess Brands, Inc., et al.

*MODIFIED BENCH RULING ON THE MOTION OF THE BAKERY, CONFECTIONARY, TOBACCO WORKERS AND GRAIN MILLERS INTERNATIONAL UNION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION*

ROBERT D. DRAIN, Bankruptcy Judge.

I have before me the motion of the Bakery, Confectionary, Tobacco Workers and Grain Millers International Union—or the Bakers' Union—to dismiss the 1113/1114 motion of the debtor for lack of subject matter jurisdiction.

The motion is premised upon the Bakers' Union's view of the plain language of Section 1113 of the Bankruptcy Code, which is the sole source to permit the rejection of a collective bargaining agreement by the bankruptcy court.

The statute provides, in relevant part in Section 1113(a), that "The debtor in possession may assume or reject a collective bargaining agreement only in accordance with the provisions of this section." Sections (b) through (d)—or subsections (b) through (d) of Section 1113, then set forth the criteria and process for a debtor in possession's rejection of a collective bargaining agreement.

And then Section 1113(f) provides that "no provision of this title shall be construed to permit a trustee"—which is defined in Section 1113(a) as also including a debtor in possession—"to unilaterally terminate or alter any provisions of a collec-

tive bargaining agreement prior to compliance with the provisions of this section."

In each instance of the sections that I've quoted the statute refers to a "collective bargaining agreement." The Bakers' union asserts that now that its identified collective bargaining agreements have expired, they are not viewed under the law as "agreements," but, rather, they are viewed as setting forth terms that remain, in part, in effect until the parties, in good faith, bargain to impasse, at which point those terms are no longer in effect under the NLRA, subject, of course, to either party's right to seek a determination from the NLRB, and then, ultimately, through the court process, that the other side had not bargained in good faith to impasse.

The Bakers' union contends—and I agree with it—that, technically speaking, that regime, that post-expiration regime is not one in which the collective bargaining agreement itself governs, but, rather, that the NLRB governs in a way that leaves key provisions, but not all of the provisions, of the collective bargaining agreement in effect under the law.

The debtors contend that in drafting Section 1113(a) through (d) and 1113(f) Congress meant more than simply that collective bargaining agreement *as a contract*, but also any of the debtor's *obligations* under that agreement, including obligations to perform according to the terms of the provisions of such agreement that are required to be performed under the NLRA until good faith bargaining to impasse.

Both sides have argued their positions effectively and, frankly, there is considerable merit to each position. The case law in this area is far from controlling. Both sides have cited decisions that favor their respective positions. The debtors rely, as far as decisions on point, primarily upon *In*

*re Karykeion, Inc.*, 435 B.R. 663 (Bankr. C.D.Cal.2010).

In that decision Bankruptcy Judge Tighe agrees with the debtor's view that the interpretation that the Bakers' Union would impose on the statute would impermissibly leave a debtor at the mercy of a non-bankruptcy court-supervised—and, necessarily, under the statute—rapid bargaining and decision-making process, instead subjecting them to the uncertainties of what Judge Tighe refers to as "the more formal bargaining process" under the NLRA, as informed by the risk of after-the-fact sanction under Sections 8(a) and 8(d) of the NLRA.

The Karykeion opinion concludes that Congress must not have meant to subject a debtor to that process when, in essence, the key provisions of the collective bargaining agreement are still in effect post-expiration. In support of that view, Judge Tighe cites, as do the debtors, Section 1113(e) of the Bankruptcy Code which states, "If, during a period when the collective bargaining agreement continues in effect and if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim changes in the terms, conditions, wages and benefits or work rules provided by a collective bargaining agreement. Any hearing under this paragraph shall be scheduled in accordance with the needs of the trustee. The implementation of such interim changes shall not render the application for rejection moot."

Judge Tighe points out that the phrase "when the bargaining agreement continues in effect" in Section 1113(e) could easily be read to contemplate that the terms of the agreement remain in effect or terms of the agreement as opposed to the agreement remain in effect, which arguably is a fair

layman's summary of what happens after the expiration of a collective bargaining agreement.

That view is buttressed by the fact that Subsection 1113(e) refers to alterations only in respect of conditions waived as benefits or work rules which, at least based on my understanding, would be the types of provisions that would be viewed as carrying on after expiration until good faith bargaining to impasse.

The other decision relied upon by the debtor dealing with a similar fact pattern is *In re Ormet Corp.*, 316 B.R. 662 (Bankr. S.D.Ohio 2004), in which the court concluded, where the 1113 process started, as it did here, with agreements still in effect and the agreements subsequently expired before the process ended, "The debtors should not be penalized for their diligent efforts over the course of several months to make a proposal based on the most complete and reliable information available, and to provide the parties with all necessary information to evaluate that proposal. The statute requires far less. The debtors also should not have to risk being charged with an unfair labor practice by declaring an impasse and unilaterally making changes to the terms and conditions of the parties' agreements without this Court approval." 316 B.R. at 665.

Both of those decisions assume without any real evidence that there would, in fact, be a material difference in the time within which a debtor could get comfort that the proposed new terms for a collective bargaining agreement could, in fact, be enforced without the risk of sanction.

They also assume, without any real evidence, that the uncertainty of a subsequent NLRB determination and an inevitable litigation—which would probably end up with a litigation at the federal court level under Section 8(a) or 8(d) of the NLRA—would so chill the debtor's reorga-

nization efforts and, in particular, the debtor's efforts to raise exit financing or close a transaction necessary to preserve the debtor's going concern value that Congress would have meant when it referred to "a collective bargaining agreement" in Sections 1113(a) through (d) and (f) that it includes the collective bargaining agreement [in effect] after its expiration.

It is not clear to me that, in fact, that would be the case, however. Obviously, Congress imposed a rapid bargaining process which, if the parties—or one party—does not pursue in good faith and which otherwise satisfies the requirements of Section 1113 will lead to a court order permitting the rejection of the collective bargaining agreement. And, intuitively, I feel that the bargain to impasse process outside of the 1113 process, under the NLRA, could well be more lengthy or create more risk of uncertainty for prospective investors or acquirers of the debtors as a going concern. But it is at this level only an intuition. The debtor has not offered evidence on this issue. It is a fact issue that for example, may lead to a different result as between the NLRA and the RLA.

What is clear to me is that Congress created a sui generis provision in Section 1113. As noted by the Second Circuit in *In re Northwest Airlines Corp.*, 483 F.3d 160 (2d Cir.2007), the purpose of Section 1113 is different from the statutory construct of Section 365 of the Bankruptcy Code. It is a self-contained provision. Thus, as interpreted by the Second Circuit in the Northwest Airlines case, it provides for the abrogation of a collective bargaining agreement, if the court grants the debtor's motion, which if it's not on a consensual basis means that the union does not have a breach claim, given that there is no provision of Section 1113 that provides for such a claim and Sections 365

and 502(g) govern only rejections of current contracts under Section 365.

The debtor's "policy and purpose" argument, therefore, I believe is a stretch here. Clearly, there is a unique purpose to Section 1113, and that unique purpose is intended to provide for expedited, good faith bargaining and, ultimately, a determination by the court, if that doesn't occur. But I do not necessarily read in the statute a purpose extending it beyond the collective bargaining agreement itself to discreet provisions of the agreement that would remain, under the law, although not under the agreement itself, in effect post-expiration.

In fact, I view the language in Section 1113(e) to create a distinction between provisions that continue in effect and the agreement as a whole. In construing the statute, it would appear to me to be more reasonable to view Section 1113(e) as an exception to Section 1113's other provisions that generally focus on the contract itself and not on term that would be in effect, except for instances, as set forth in 1113(e), where, if it is essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court may authorize, on an interim basis, the implementation of interim changes to terms, conditions, waives, benefits or work rules.

There are two cases, including one from this district, that come very close to taking that view. (Of course, one can distinguish each of them, as I'll point out in a moment.)

But in both *In re Chas. P. Young Company,* 111 B.R. 410 (Bankr.S.D.N.Y.1990) and *In re D.O. & W. Coal Company,* 93 B.R. 454 (Bankr.W.D.Va.1988), the court concluded that orders under 1113(e) could continue to apply after the expiration of the collective bargaining agreement. Now in each of those cases the court had already entered the order, so one could distinguish those cases from the present facts in saying that the court was continuing to implement an order that the parties had relied upon. But I believe the rulings go beyond that, particularly Judge Blackshear's ruling in the Chas. P. Young case. I do so particularly because in that case he recognized, consistent with pre-Section 1113 case law (but of course this was after the event under Section 1113) that "rejection of the collective bargaining agreement pursuant to Section 1113(b) and (c) is a moot issue if the agreement expires by its own terms and before the bankruptcy court has a hearing on rejection."

He was not alone in reaching that conclusion. It was also reached after the enactment of Section 1113, albeit in dicta, by the Ninth Circuit Bankruptcy Appellate Panel in *In re San Rafael Baking Company,* 219 B.R. 860 (9th Cir. BAP 1998). And it is stated by the editors of *Colliers,* albeit that they rely upon some pre-Section 1113 authority as well, that this is the majority view. 7 Collier on Bankruptcy ¶ 1113.02[1][d] (16th ed. 2011).

But my conclusion here is not a matter of toting up the cases that take the Bakers' union's view of the matter here and comparing them against the number of cases that take the debtor's view.

My conclusion instead is based first on the plain language of Section 1113 as a whole and the distinction between 1113(e) and 1113(a) through (d) and (f); and, secondly, my view that, given the importance of Section 1113 and its visibility and the visibility of the issues it relates to, I believe that Congress should be viewed as going only as far as the plain language takes it in this section, and that I should not presume to extend the language in the way that the debtor asks to do to further a policy concern, particularly where, again,

the facts allegedly supporting that policy argument are, I believe, on this record no more than convincing at a merely intuitive level.

I believe if I were to extend the language of "collective bargaining agreement" to "collective bargaining agreement in effect" or "collective bargaining agreement as it covers the relations between the parties," I would be basing that conclusion on, first, a policy that is not well-articulated or found in the statute itself. Secondly, I'm of a view that as a factual matter I do not believe it has been established that the post-expiration regime would so interfere with whatever the congressional policy is behind Section 1113 as to the negate, Congress's policy. This result might be different if the CBAs were governed by the RLA. *See* 7 Collier on Bankruptcy at ¶ 1113.07[1][d]. And, finally, I believe it would stretch the statute's language too far.

 As noted during oral argument, only certain provisions of the collective bargaining agreement remain in effect by operation of the NLRA. So it appears to me that, absent consent, the agreement could not be *assumed*, since it can only be assumed in toto, again, unless the parties agree to amend it, and it is logical that an agreement that cannot be assumed under Section 1113(a) (which uses the phrase "assume or reject"), also cannot be rejected under Sections 1113(a) and (c),

Given the expiration of the agreement, I believe that 1113 instead leaves the parties (except, I believe, under 1113(e)) under the fallback provisions of otherwise applicable law, including here, the NLRA.

Courts have found at times that that fallback regime may assist the debtor in relieving the debtor of certain claims. *See*, for example, *In re CF & I Fabricators of Utah Inc.*, 163 B.R. 858 (Bankr. D.Utah 1994). appeal dismissed, 169 B.R.

984 (D.Utah 1994), but I don't believe Congress intended in this provision, and certainly not consistent with the plain language of the provision, to impose the rejection process on parties to an already expired agreement.

As the debtors have noted, and as the Second Circuit has noted in the Northwest case, except for its expedited time frame, the requirements of Section 1113(a) through (d) contemplate bargaining in good faith to impasse along with additional requirements going to the reorganization and the equities. Those requirements, at least the bargaining in good faith to impasse, I believe are in complete overlap with the NLRA process. I find it hard to believe that, as a legal matter, the NLRB and any reviewing court would not take into account the context in which the debtors and the Bakers' locals find themselves, including the effect of uncertainty and the need for a quick resolution in order to obtain exit financing for an acquirer's agreement to preserve the debtors as a going concern as opposed to having a liquidation.

And for that reason, again, it is hard for me to find such a clear dichotomy between the process that the union says must apply here and what the debtor contends Congress intended to apply under Section 1113 to require that 1113 would apply even when an agreement has expired.

So, for those reasons, I will grant the Bakers' unions' motion and, Mr. Freund, you can submit an order consistent with that ruling.